# Richmond

RUTH LESTER BUCHANAN V. JOHN R. BUCHANAN.

January 8, 1940.

. Record No. 2200.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and
Spratley, JJ.

258

*John S. Barbour,* for the appellant.

*Walter H. Robertson, Thomas B. Gay* and *Lewis F. Powell, Jr.,* for the appellee.

HOLT, J., delivered the opinion of the court.

This case is a sequel of *Buchanan* v. *Buchanan,* 170 Va. 458, 197 S. E. 426, 116 A. L. R. 688. In the present suit the trial court sustained a demurrer to the bill of complaint and dismissed it. The plaintiff, Ruth Lester Buchanan, has appealed.

The bill is voluminous, covering twenty-five pages of the printed record. Its sufficiency as a statement of a cause of action of which a court of equity has jurisdiction is the question presented, and it seems necessary to here set forth the bill's allegations. Condensed and otherwise simplified, yet preserving their gist, they are as follows:

I. That the parties were married January 15, 1915, and that there are three children of the marriage: Helen Warren Buchanan, twenty-one years old and married, her married name not given; James A. Buchanan, IV, nineteen years old; and John R. Buchanan, sixteen years old.

II. That long prior to May 18, 1931, and while the plaintiff and the defendant were both residents of Fauquier county, Virginia, the parties separated and were living apart; and that on May 18, 1931, they entered into a contract in writing, under seal, whereby it was agreed as follows:

1. That the plaintiff and the three children should continue for five years to occupy the home, called "Leny Manor," near Warrenton, Virginia.

2. That during their minority and so long as the children lived with the plaintiff, the defendant should pay the plaintiff $1500 on the first of every month, commencing June 1, 1931, and continuing through the five-year period, the money to be used by the plaintiff, in her discretion, in the maintenance of the home, supplying the table, paying servants' wages, the purchase of necessary clothing for the children, the payment of ordinary medical and dental bills incurred in behalf of the children, and for feed for the horses and ponies owned by the plaintiff and the children. That at the end of the five years the monthly payments of $1500 should be used by the plaintiff for the support of the children, should they continue to make their home with her. That the defendant should pay all tuition and board bills while the children were at boarding school or college, and all extraordinary medical and dental bills incurred in behalf of the children. That should one or more of the children cease to live with the plaintiff the monthly payments by the defendant should be reduced proportionately, this, however, not to apply when the child or children were at boarding school or college. That all the foregoing payments should cease upon the death of the defendant.

3. That in satisfaction of all claims to maintenance and dower the defendant should pay the plaintiff $25,000 in cash, and execute his notes of even date with the contract for the total sum of $125,000, payable on or before five years from date with interest at 6% per annum, payable quarterly, and the notes to be secured by first deed of trust on certain real estate in Washington, D. C.

4. That the plaintiff should relinquish in favor of the defendant all title and interest in the summer home, standing in their joint names, in Canada.

5. That the plaintiff should assume and pay within thirty days store bills incurred by the plaintiff amounting to $10,458.29.

6. That during the five-year period the defendant should have the right to occupy with the children the Leny Manor home from the 15th to and including the 21st of each month, one-half of the Christmas holidays and six weeks in summer, during which times the plaintiff should reside elsewhere.

7. That the plaintiff, during temporary absences from Leny Manor, should have the right to take with her a certain automobile and a chauffeur to run it.

8. That, commencing in the fall of 1931, the daughter and elder son should be sent to boarding school, the school or schools to be agreed upon mutually by the parties, or, in default of such agreement, the school or schools to be selected by such person as the parties should agree upon.

9. That the plaintiff should not thereafter incur any indebtedness for which the defendant would be legally liable.

10. That the defendant be free, through the trustees under his father's will, to sell Leny Manor during the five-year period, but that in such case he should provide immediately another suitable home in the District of Columbia, Maryland or Virginia to be occupied during the remainder of that period.

III. That on or about May 20, 1931, the defendant went to the State of Nevada and shortly thereafter obtained from a court of general and equitable jurisdiction in that State a decree granting the present defendant an absolute divorce from the present plaintiff, by which decree the contract of May 18, 1931, was approved, adopted and confirmed by the Nevada court.

IV. That the contract and decree concerning property rights and money payments were duly carried out by both parties until and including May, 1933, but that on June 1,

1933, the defendant failed to pay the $1500 due and payable on that date.

V. That on June 27, 1933, the present defendant filed in the Fauquier Circuit Court a petition alleging the divorce above mentioned and also the contract of May 18, 1931, which latter had, at the present defendant's instance, been incorporated as a part of the divorce decree rendered by the Nevada court, but that in his petition the defendant denied that the contract was enforceable because, as alleged by him, the Nevada court did not have jurisdiction of the subject matter in that respect. That the petition further and falsely alleged that the present plaintiff had broken the contract by diverting to her individual use the $1500 monthly payments, with the result that the children had been insufficiently clothed and nourished and their pleasures neglected; that the plaintiff was unfit to have the rearing of the children, and that their best interests demanded that they be taken from the plaintiff, their mother, and placed in surroundings which would tend to develop their characters; that they were very unhappy; that the mother absented herself from her home unnecessarily on many occasions; and that the prayer of the defendant's petition was that the children be turned over to him, that a writ of habeas corpus issue, and that the court make such order or decree as, in its judgment, might be most conducive to the well-being of the children.

VI. That the present plaintiff filed an answer to the petition above mentioned, in which answer she denied all allegations that reflected upon her, "and while denying the validity of the Nevada divorce on the ground that the court was without jurisdiction 'in that neither the said defendant nor this respondent was ever domiciled in the State of Nevada' insisted on the validity of said contract as adopted and ratified by the Nevada court."

VII. That before the issues presented by the petition and answer were brought to trial the present plaintiff, subject to the approval of the court in said cause, agreed with the

defendant to the following modifications of the contract of May 18, 1931:

1. That the plaintiff vacate the Leny Manor house January 1, 1934.

2. That the defendant be released from the payment of the $1500 each month and pay promptly all bills then or thereafter incurred for the proper maintenance and education of the minor children, including their traveling expense to and from school or college.

3. That interest on the $125,000 of notes given the plaintiff be paid monthly instead of quarterly, and that the maturity of the principal, at the defendant's option, be extended three years, provided it was reduced to $100,000.

4. That the 6th paragraph, relating to the defendant's right to occupy the house during a part of the school holidays and the summer vacation, be stricken, and in its stead that during all such periods each parent should have the children for one-half the time, the first half to be enjoyed alternately.

5. That the 8th paragraph be stricken, and, in its stead, commencing in the fall of 1933, that the daughter continue at the school she was then attending until she was ready for college, and then go to such college as she might select; that the two sons should continue at the schools they were attending or be placed at such other schools as the parents should agree on until they were ready for college, after which they should be placed in such college as the sons, after consultation with their parents, might select.

That, beginning November 1, 1933, and continuing during the infancy of any of the children, the defendant, on the 1st of each month, should pay the plaintiff $375 instead of $1500 towards the maintenance of a home, other than Leny Manor, for herself and the children, and that he also pay certain bills already incurred for her and their support.

That the modifications so agreed upon should be submitted to the court for its approval, and, if approved, that a consent decree should be entered confirming the modi-

fied agreement and directing its performance; and that the question of the validity of the Nevada divorce should be passed upon by a court on its own merits, independent of the agreement.

VIII. That the original agreement of May 18, 1931, and the proposed modifications were submitted to the trial court September 29, 1933, at a hearing on the petition theretofore, on June 27, 1933, filed by the defendant and on the plaintiff's answer to that petition; that evidence including the agreement of May 18, 1931, and the decree of the Nevada court, was introduced by the respective sides, upon consideration of all which the trial court, by an order entered September 29, 1933, held that the Nevada decree of divorce was valid in that State and entitled to recognition as such by the trial court, "which is hereby accorded it by the court;" that by consent of the parties the court approved all the proposed modifications of the agreement of May 18, 1931, and ordered that "as amended said contract is hereby ratified and confirmed and the said parties thereto are directed to perform the same."

IX. That the original agreement and its modifications "constituted an entire and indivisible agreement and that the principal and controlling consideration therefor moving to your complainant was a valid ratification of said contract, as modified, by the court and its judgment that the parties should be 'directed to perform the same,' and that without compliance with this stipulation and agreement and its ratification as aforesaid by the court that she never would have agreed thereto."

X. That shortly following the entry of the judgment last mentioned, namely, in October, 1933, the defendant remarried, departed on an extensive trip with his second wife, leaving the children in the plaintiff's custody, as contemplated by the agreement; and that, while the defendant made the payments called for by the agreement as modified, he ever thereafter refused to discuss with the plaintiff any question relating to what schools they should attend or anything touching that matter.

XI. That the defendant constantly thereafter disregarded his contract obligations respecting the education and proper maintenance of the two sons; that repeatedly 'he subjected them to great mortification and shame by reason of his failure to meet their tuition bills at maturity, failed to respond to letters from his children and from the school authorities calling his attention to his delinquency in that regard, to the extent that during the 1933-1934 school term his sons were denied credit in the school stores for supplies, necessities and conveniences that other boys in their station of life attending said schools were usually permitted and expected to have, and they were threatened with denial of scholastic scores and honors won by them, and he also failed and refused to meet their necessary dental and medical bills all to the great shame, mortification, mental suffering and injury of the said boys as well as your complainant." That the plaintiff was compelled to assure the payment of such bills in order to continue the boys at the schools, and that some of them are still unpaid.

XII. That it became necessary for the plaintiff to arrange to send the elder son to some school other than the one he was attending; that in the summer or early fall of 1934 she attempted to take the matter up with the defendant but that he failed and refused to respond to her suggestions, and that she was forced to make tentative arrangements for sending the elder son to the Hill School at Pottstown, Pennsylvania; that this was communicated to the defendant through that son and that the defendant led both the boys, and through them the plaintiff, to believe that he acquiesced in the arrangement, but that, at the last moment, the defendant undertook to require the sons, who were then in his home temporarily, to attend a day school at Warrenton, Virginia, whereupon they left the defendant's home in the night and went to a neighbor's, where the plaintiff later got them and placed the elder of the two at the Hill School after the principal had agreed to take him without prepayment of tuition upon her assurance that she would present the facts to the court and use her best efforts

to obtain an order ratifying her action and requiring the defendant to make the necessary payments.

XIII. That, on November 24, 1934, the plaintiff filed a petition in the Fauquier Circuit Court setting out all the matters hereinbefore recited and praying that a proper order be entered making more flexible the provision of the decree relating to the custody of the children during their vacations, that the court give directions for their proper education and training, and that the defendant be required to promptly pay all proper expenses incident to their education and maintenance, in accordance with the agreement of May 18, 1931, as modified by that of September 29, 1933; that the defendant appeared and answered and by consent of the parties the matter was set for hearing in vacation on March 21, 1935; that oral evidence was introduced and that the judge talked with the three children out of the presence of their parents and later, on June 15 (24), 1935, entered an order as follows:

1. That as the children were of sufficient age for consideration to be given their preference as to which parent they, respectively, should reside with when not at school, and the daughter having expressed a preference to reside with the father, while the two boys preferred to be with their mother, and neither parent being unfit for such custody, it was so ordered.

2. That the best interests of all parties would be served by requiring a stated sum to be paid periodically by the defendant to the plaintiff to be expended by the latter in her discretion in the preparatory school education of the two sons, and hence that, in addition to the sums directed to be paid by the defendant to the plaintiff by the order of September 29, 1933, the defendant, beginning July 1. 1935, pay the plaintiff on the first of each month and until the further order of the court, another $375, to be applied by the plaintiff in payment of school expenses of the two sons at such schools as she might select and to ordinary medical bills and clothing bills.

3. That the defendant pay all outstanding bills properly incurred since September, 1933, in connection with the attendance of the sons at the Fessenden and Hill Schools, respectively, all bills incurred since November 1, 1933, for clothing, medical and dental care, and that the matter be referred to a Special Commissioner.

4. That to the extent indicated, but not further, the order of September 29, 1933, "is modified and the parties hereto are directed to perform the same as so modified."

5. * * * * * * * * * *

6. That the defendant pay the plaintiff's attorney $500 for his services.

7. That either party be at liberty, after twelve months, to apply to the court for further relief based upon changed conditions.

XIV. That the modifications of the order of September 29, 1933, in the second paragraph of the order just referred to, that of June 15 (24), 1935, were made at the suggestion of counsel for the defendant.

XV. That, after full hearing, the Special Commissioner, on September 11, 1935, filed his report in which he found the defendant liable for the payment of the bills of the Fessenden School, $2,010.29, the Hill School, $1,644.87, and seven other bills, the nine bills making an aggregate of $5,385.45; that the defendant excepted to the item of the Hill School only, and upon the ground that it was excessive; that the exceptions were overruled and the report confirmed October 15, 1935, and the defendant was directed to pay the several bills.

XVI. That the defendant complied promptly until April 1, 1937, with so much of the order of June 15 (24), 1935, as required him to pay the additional sum of $375 each month, but ceased paying April 1, 1937; that he has never complied with the order of October 15, 1935, and that he declared it to be his purpose not to make further payments.

XVII. That the plaintiff asked a rule against the defendant to show cause why he should not be attached for contempt; that the rule was awarded and that at a hear-

ing on May 14, 1937, the trial court entered an order directing the sheriff to take defendant into custody until he should pay the two sums of $375 each due on April 1, 1937, and on the first of each succeeding month, but that the court suspended the execution of the order pending application by the defendant for a writ of error; that the Supreme Court of Appeals, by its judgment of January    , 1938, held null and void the judgments of the trial court of September 29, 1939, and June 15 (24), 1935, in so far as they modified the payments or required the payment of specific sums by the defendant to the plaintiff, but held that those judgments were valid in so far as they dealt with the custody of the children.

XVIII. That, in the circumstances previously set forth in the bill, the plaintiff, in her own right and as custodian of the two sons, is in doubt as to her rights, duties and obligations, "and she needs the guidance, direction and protection of a court of equity and conscience in all these respects."

XIX. That she is advised and charges that the agreement of May 18, 1931, was and is binding upon her former husband and herself; that it was recognized as such by the Nevada court, at the instance of the present defendant, was so decreed by that court; that the decree of the Nevada court is, under the Constitution of the United States, entitled to full faith and credit in the courts of Virginia; that she is entitled to the specific performance of the original agreement under the laws of Virginia, independent of the Federal Constitution, except to the extent such agreement may have been validly amended by the decree of the Fauquier Circuit Court of September 29, 1933.

XX. That she consented to the entry of the decree of September 29, 1933, in good faith and in the firm conviction, induced by the advice of her counsel, that that decree was valid, binding and enforceable in its entirety by a court of equity at the instance of either party or any beneficiary under it, and that "she believes and charges that the defendant also consented to said decree under the same con-

viction and belief, and with no intention to work a fraud upon her and his children."

XXI. That it was only after the defendant had failed and refused to comply with the agreement of May 18, 1931, as amended by that of September 29, 1933, both supposedly valid, that she filed her petition on November 24, 1934 (paragraph XIII, *supra*) ; that the defendant, also acting under the belief that the two agreements were valid, filed his answer and cross-bill denying some of the breaches charged, admitting others, and attempting to qualify or justify others; that he and his counsel attended the hearing; that the decree of June 15, 1935, was, in the main, complied with by the defendant until April 1, 1937; but that as this court, in the former habeas corpus case, held that decree void in all respects except its provisions relating to the custody of the children, the entire attempted modification of the original agreement of May 18, 1931, by the supplemental agreement of September 29, 1933, and the decree then entered, was void also, and that the original agreement of May 18, 1931, and that agreement only, stands, because the provision in the amendment of September 29, 1933, that "the court should direct its performance as a part thereof and require its enforcement by summary proceedings, was an essential and vital part of the contract evidenced thereby without which none of its provisions would have been assented to," and because there was a mutual mistake of law and fact when the parties supposed the modifications of September 29, 1933, to be valid.

XXII. That, in reliance upon the validity of the various orders and decrees of the Circuit Court, and since the defendant's defaults in complying with those orders, the plaintiff, between April 1, 1937, and September 1, 1938, incurred debts for the support and education of the two sons amounting to $3,077.85 and also paid for those purposes out of her own funds $3,224.13, itemized statements being filed as exhibits; that her resources and her credit have been exhausted; that she has no source of income except the monthly payments of interest on the $125,000 made her by the

defendant and what she derives from about $5,000 left of the $25,000 in cash paid her by the defendant when the agreement of May 18, 1931, was executed; that her income is insufficient to pay the bills for the support and education of the two sons, but that she has borrowed sums necessary for making initial payments to schools; and that the defendant has refused to pay either to her or to the schools any of those expenses.

XXIII. That the plaintiff has no adequate remedy at law, but, if she had, it would require a multiplicity of suits.

XXIV. The prayer of the bill, made on behalf of herself and all others interested in the contracts, orders and decrees alleged, is, in addition to the formal prayer that the defendant be required to answer, that the minor children be taken under the care, supervision and protection of the court, and that she be given the right to apply to the court from time to time for guidance; that the court determine which of the agreements, or what parts of either, contain the present contract between her and the defendant; that the defendant be required specifically to perform in its entirety the contract as so ascertained, including the payment of the notes executed in her favor amounting to $125,000; that the defendant be required to provide for the proper care, maintenance and education of the two sons committed to her custody; that a declaratory judgment be entered fixing the reciprocal rights, duties and obligations past and future, of the parties; "that the same as so ascertained be declared a valid lien on all of the defendant's property, real and personal, and especially on all of his right, title and interest in the Leny Manor property, as well as in any other real estate of which his father died seised and possessed and in which he has an interest; that from time to time compliance with court orders be required, and, pending final ascertainment of rights and obligations, that the defendant be required to pay the plaintiff at specific times sums sufficient to enable her, under the direction of the court, to provide for the adequate and proper education and sup-

port of the children and for the maintenance of a home for herself and them in accordance with their station in life."

On November 28, 1938, the defendant filed a demurrer to the foregoing bill on grounds, in substance, as follows:

1. That a court of equity has no jurisdiction of the matters alleged, because the plaintiff has a plain, adequate and complete remedy at law.

2. That a court of equity has no jurisdiction to decree specific performance of the contract of May 18, 1931, either in its original form or as amended by consent of the parties on September 29, 1933, because the contract provides only for the payment of money.

3. That to the extent the bill seeks the recovery of money alleged to be due "by operation of law" it states a cause of action cognizable, if at all, only in a court of law.

4. That the statute relating to Declaratory Judgments can not be invoked as a means of obtaining access to a court of equity, and that the bill does not state a cause of action where relief under the statute would be appropriate.

5. That the bill is multifarious in that it attempts to combine the claim of the plaintiff with those of other persons.

6. That the amendments of September 29, 1933, to the original contract of May 18, 1931, were not vitiated in their entirety by reason of the fact that the decree purporting to confirm them was held void except as to matters relating to the custody of the children.

7. That the bill fails "to state or show a valid cause of action at law or in equity."

Accompanying the demurrer, the defendant filed also a special plea in which, after setting forth much of the same history of the litigation as is narrated in the plaintiff's bill, pleads, in substance, that, at the instance of the plaintiff and the two sons, he has been deprived of the custody, control and companionship of the sons; that his promises of contributions to the support of the latter were in consideration of promises of the plaintiff that he should have such custody; that because of the failure of that consideration he is released from his contractual obligations in that re-

spect, and that, in the circumstances, he is under no general legal duty to contribute to the support of the boys.

Later the plaintiff amended her bill by adding the following averments:

"Your complainant is further informed, believes and charges that independent of the mistakes hereinbefore charged in respect to the true effect and operation of the agreement evidenced by the consent decree of September 29, 1933, purporting to modify the original agreement of May 18, 1931, and the decree of the Nevada court in that regard as hereinbefore alleged, that the repeated failure and refusal of the said defendant to perform the said contract as so amended, as hereinbefore alleged, has amounted to a repudiation thereof and has constituted such a failure of consideration thereof as to necessitate the cancellation and rescission thereof, and to entitle her and her said children to have the same cancelled, rescinded and set aside in its entirety, and to have the said contract of May 18, 1931, and the decree of the Nevada court in that respect restored in their entirety."

And also added the following to the prayer of the original bill:

"And even though validly amended that the court rescind and annul the said contract evidenced by the consent decree of September 29, 1933, in so far as it purports to amend the said contract of May 18, 1931, aforesaid, and the decree of the Nevada court in that regard and that the latter be reinstated and restored in its entirety."

The defendant demurred to the bill as so amended, the demurrer was, by decree made and entered April 7, 1939, sustained by the trial court, and the bill was dismissed. It is from that decree the present appeal was taken.

The question for decision is, Does the bill as amended state a cause of action cognizable in a court of equity?

Despite the extreme length and miscellaneous contents of the bill, the case on the present appeal, as we see it, lies within rather narrow boundaries, particularly in view of the able opinion delivered in behalf of the court by Mr.

Justice Hudgins in the former case, *Buchanan* v. *Buchanan*, 170 Va. 458, 197 S. E. 426, 116 A. L. R. 688.

■ First of all, it is to be noted that the present case, although closely related to *Buchanan* v. *Buchanan*, 170 Va. 458, 197 S. E. 426, 116 A. L. R. 688, is a suit *de novo* and definitely in equity, and that as such it is free from the jurisdictional limitations which characterize a *habeas corpus* proceeding or an action at law. Due recognition of these differences goes far toward deciding the instant case, and perhaps would have obviated the present appeal.

■■ In 1 Minor's Institutes, p. 432, the learned author states that a bill in equity—

"is the most direct, usual, and eligible remedy, in general, to try the right of the parent to the custody of the child. The court of chancery, as representing the parental and protecting power of the Commonwealth, has jurisdiction to determine controversies concerning the guardianship of a minor; to make orders for his support, if any property capable of being so applied be within the reach of the court; and in extreme cases, as we have seen, even to control the right of a father to the custody of his child."

■■ Plainly equity has power to order that money dedicated to the support of children be forthcoming and, when forthcoming, that it be properly applied. This principle alone is sufficient to confer jurisdiction in the instant case.

Has equity jurisdiction to enforce the payment of annuities? If law courts alone can give relief, we are confronted with the possibilities of endless suits and of interminable litigation, during the progress of which these children may find themselves between an upper and nether millstone.

■ Happily this is not an open question in Virginia. Not only may resort be had to a suit in equity for the collection of arrears of annuity, but there should be reserved liberty to apply to the chancellor for relief to cover payments thereafter falling due. Opinion by Judge Roane in cause of *Marshall* v. *Thompson*, 2 Munf. (16 Va.) 412. This decision has never been reversed and has never been adversely criticized in any of our subsequent opinions.

Here Mr. Buchanan admits that there are outstanding, unpaid installments, but he contends that he is not liable therefor and is not liable for any which may hereafter become due according to their purport and tenor.

■■■■ It is not sufficient that there be a remedy at law in order to make that remedy exclusive. It must also be adequate.

"Equity has jurisdiction in cases of recognized rights, when a plain, adequate and complete remedy cannot be had in the courts of common law. The remedy must be plain; for if it be doubtful and obscure at law, equity will assert a jurisdiction. It must be adequate, for if at law it falls short of what a party is entitled to, that founds a jurisdiction in equity. And it must be complete; that is, it must attain the full end and justice of the case. It must reach the whole mischief, and secure the whole right of the party in a perfect manner, at the present time and in the future, otherwise equity will interfere and give such relief and aid as the particular case may require. The jurisdiction of a court of equity is therefore sometimes concurrent with the jurisdiction of a court of law; it is sometimes exclusive of it, and it is sometimes auxiliary to it." *Feckheimer* v. *Nat. Exchange Bank of Norfolk, Va.,* 79 Va. 80.

■■■■ "A remedy cannot be said to be fully adequate to meet the justice and necessities of a case unless it reaches the end intended, and actually compels a performance of the duty in question. Such other remedy, in order to constitute a bar to *mandamus,* must be adequate to place the injured party, as nearly as the circumstances of the case will permit, in the position which he occupied before the injury or omission complained of.

■■■■ "The controlling question is not 'Has the party a remedy, but is that remedy fully commensurate with the necessities and rights of the party under all the circumstances of the particular case.'" *Richmond Railway & Electric Co.* v. *Brown,* 97 Va. 26, 32 S. E. 775, quoted with approval in *Sinclair* v. *Young,* 100 Va. 284, 40 S. E. 907.

*Dulaney's Adm'r* v. *Dulaney*, 105 Va. 429, 54 S. E. 40, and *Eschner* v. *Eschner*, 146 Va. 417, 131 S. E. 800, indirectly touch upon the issue here. In the first of them an antenuptial contract was involved. The wife filed her bill against the administrator of her deceased husband's estate, and the main question for decision was as to whether the taxes on a fund which had been set aside for the wife should be paid out of the income derived from it or by the administrator out of the other assets of the husband's estate. A demurrer to the bill was overruled by the trial court, and on appeal, this court, upon the question of the jurisdiction of a court of equity, 105 Va. at page 432, 54 S. E. at page 41, said:

"We are of opinion that as the bill calls for not only a construction of the marriage contract of December 25, 1871, * * * but to have her rights under the contract in the future during the remainder of her life fixed and determined, the demurrer to the bill was properly overruled."

In the second of these cases, under review was a marriage settlement, made pending a suit for divorce. In it the husband assigned to his wife certain funds, agreed to execute and deliver his note for $4,000 and to pay to his wife "an annuity" of $1800 a year "in lieu of alimony." The wife brought a suit in equity to enforce its contract provisions. She prevailed in the lower court, and on appeal she prevailed in this. Her husband was ordered to pay her all annuities in arrears. It was contended that this settlement was without consideration. That contention was not sustained, the court being of opinion that its several promises constituted one entire contract. To the original bill a demurrer was filed, in which among other grounds, it was said that there was an adequate remedy at law. This demurrer was sustained with leave to amend. The bill was amended. It alleged "the facts set forth in the original bill of complaint and in addition alleging that the said J. F. Paul Eschner was insolvent and that he had conveyed or was about to convey his property with the intent to hinder, delay or defraud his creditors. The said J. F. Paul

Eschner filed a demurrer to the said amended bill of complaint." The amended bill was again demurred to on the ground that law afforded adequate relief. That demurrer was overruled, and this was one of the grounds assigned as error in the petition for appeal.

In a "Rejoinder brief on behalf of appellant," it is said:

"Realizing that the vital question involved here is the legality of the agreement entered into between the parties to this suit providing for the payment of eighteen hundred dollars per year to Mrs. Eschner, and desiring to bring the matter to a final determination as soon as possible, this defendant hereby waives his demurrer and relies entirely upon the second assignment of error set up in his petition for appeal, to-wit, that the agreement was without consideration."

Looking to the substance of things, this court confirmed a decree directing that defaulting annuity installments be paid.

It is contended that *Marshall* v. *Thompson, supra,* is overruled by *Campbell* v. *Rust,* 85 Va. 653, 8 S. E. 664. We do not so understand it. In the first place, *Marshall* v. *Thompson, supra,* is not mentioned; in the second place, the facts are so different as to give, even by analogy, little light.

Rust owned an ore bank and agreed to deliver ore to an iron company at a certain price per ton. He then made a contract with Campbell, reciting that he leased to him the ore bank on condition that he mine and deliver to the company a certain quantity of ore per week for a certain time. The price therefor was to be divided between the owner and the worker. The worker did not deliver the ore and said that the mine ran out and that he was not furnished the proper washer which the owner had promised to provide. The court held that whether this be true or not, the contract was not a lease of realty but one for personal services and that for it law afforded adequate relief. Plainly this does not overrule *Marshall* v. *Thompson, supra,* which, as we have seen, was not mentioned and

which has stood unquestioned for more than a hundred years.

Before women were emancipated as to their property rights and as to the right of contract, equity had exclusive jurisdiction over the enforcement of contracts whereby a husband bound himself to support his wife. That is no longer necessary. *Moreland* v. *Moreland,* 108 Va. 93, 60 S. E. 730; *Newman* v. *McComb,* 112 Va. 408, 71 S. E. 624; *Moore* v. *Crutchfield,* 136 Va. 20, 116 S. E. 482. But it does not follow that statutes which confer jurisdiction upon common law courts have taken away jurisdiction from equity.

"Courts of equity, having such jurisdiction before the enactment of the statute * * * still retain it although the statute may furnish a complete and adequate remedy at law. Courts of equity, having once acquired jurisdiction, never lose it because jurisdiction of the same matters are given to law courts, unless the statute giving such jurisdiction use prohibitory restrictive words. 1 Barton's Ch. Pr., 60, 61." *Filler* v. *Tyler,* 91 Va. 458, 22 S. E. 235, 237, quoted with approval in *Nicholas* v. *Nicholas,* 169 Va. 399, 193 S. E. 689. That courts of law and courts of equity may have concurrent jurisdiction is well understood.

Code, section 5143, gives us an excellent example of this principle. The power there given to law courts in no wise diminishes that theretofore exercised in equity. It is but cumulative and concurrent. *Blanton* v. *Keneipp,* 155 Va. 668, 156 S. E. 413.

It is further contended that there is no mutuality, from which it would follow that there can be no decree for specific performance. There must be mutuality. If one were to agree to sell his farm to his neighbor for $1,000, that neighbor could not compel a sale had he not promised to purchase.

In order to understand the situation here, we may undertake to restate conditions out of which the contract grew. The husband had deserted his wife. When he agreed to make provisions for her support and for the support of their

children, he was but doing what he was required to do. To care for and to educate these children he promised to give his wife a stated amount of money, and she, on her part, promised to use it in support of the trust for which it was given. Moreover, as we have seen, this contract itself was under seal and as an additional consideration, she actually released to her husband Canadian real estate standing in their joint names.

Again, it is said that the bill is multifarious and that the contract provisions relating to the wife are separable from those relating to the children. It is the policy of the law "to avoid a multiplicity of suits, and to reject the objection for multifariousness where there is no liability to injustice." *Matney* v. *Yates,* 121 Va. 506, 93 S. E. 694.

"A bill will not usually be regarded as multifarious, where the matters joined in the bill, though distinct, are not absolutely independent of each other, and it will be more convenient to dispose of them in one suit." Michie's Digest, Vol. 7, p. 504, citing many cases.

In discussing the divisibility of contracts, this court in *Eschner* v. *Eschner, supra* [146 Va. 417, 131 S. E. 802], said:

"The divisibility of the subject matter of the contract will not determine the entire or severable character of the contract, although it may often assist in determining the intention of the parties."

" 'Primarily the question of whether a contract is entire or severable is one of intention, which intention is to be determined from the language which the parties have used and the subject matter of the agreement. A contract may, both in its nature and its terms, be severable and yet rendered entire by the intention of the parties.' 13 C. J., p. 562, and cases cited."

" 'To arrive at this intention, regard is to be had to the situation of the parties, the subject matter of the agreement, the object which the parties had in view at the time and intended to accomplish.' *Young* v. *Ellis,* 91 Va.

[297] 301, 21 S. E. [480] 482; *McGuire* v. *Brown*, 114 Va. 235, 76 S. E. 295."

"In *Atlantic, etc., R. Co.* v. *Delaware Construction Co.*, 98 Va. 503, 37 S. E. 13, Judge Riely said:

" 'No precise or invariable rule can be laid down by which it may be determined whether the contract is entire or severable, for it is a question of construction as to the intention of the parties to be discovered in each case from the language employed and the subject matter of the contract.' "

■ Here every provision in this contract springs from a common source. According to the bill, the husband had deserted his wife and children. He was required to make provisions for them and did and thereafter went to Reno for a divorce, which he obtained. Later he remarried. We do not for an instant think that all of these matters are unrelated. The necessity that he make provisions both for his wife and for their children arose out of the same circumstances. They are all part and parcel of one series of transactions. To attempt to disentangle them would merely make confusion worse.

■ Moreover, as was said in *Vaught* v. *Meador*, 99 Va. 569, 39 S. E. 225, 86 Am. St. Rep. 908:

"The doctrine has been so often repeated in the decisions of this and other courts that it is now regarded as a well established rule that, when a court of equity acquires jurisdiction of a cause, for any purpose, it will retain it and do complete justice between the parties, enforcing, if necessary, legal rights, and applying legal remedies to accomplish that end."

We think that provisions made for the wife and children grew out of the same soil and that one would not have been made without the other; certainly not in the form in which they now appear. The demurrer should not have been sustained. This case is remanded to the trial court to the end that it may in this one suit conclude a litigation which appears to be acrimonious and might become interminable. The defendant should be given leave to answer.

In weighing what we have said, it is to be remembered that it is said in the light of those rules which govern when a demurrer has been sustained to a bill and in which a bill has been dismissed.

For reasons stated, the decree appealed from is reversed, and this cause is remanded to the trial court.

*Reversed and remanded.*