AUDREY L. CHATTIN

v.

ALVIN O. CHATTIN, ET AL.

Record No. 920653

February 26, 1993

Present: All the Justices

*Larry A. Pochucha (Murray J. Janus; Bremner, Baber & Janus,* on briefs), for appellant.

*G. Warthen Downs* for appellees.

JUSTICE KEENAN delivered the opinion of the Court.

In this appeal involving a property settlement agreement between Audrey L. Chattin (the wife) and Alvin O. Chattin (the husband), we consider whether the trial court erred: (1) in failing to decree specific performance of the agreement; (2) in failing to award the wife prejudgment interest on overdue spousal support payments; and (3) in ruling that there was insufficient proof that the husband made a fraudulent or voluntary conveyance of property.

After approximately 33 years of marriage, the husband and wife, then residents of New York, separated. They entered into a property settlement agreement in February 1986. At the time of the hearing in this case, a final decree of divorce had not been entered. The property settlement agreement provided, in material part, that the husband pay the wife $1,200 per month spousal support from January 1, 1985 through May 31, 1992; that the husband maintain an insurance policy on his life in the amount of $100,000, naming the wife as irrevocable beneficiary; and that the husband provide health insurance for the wife.

In January 1985, the husband began residing with defendant Barbara Soukup, who was married to another man at that time. Thereafter, the husband gave $268,000 to B.A.C. Realty Company, Inc. (BAC), a Delaware corporation in which Soukup was the president and the sole stockholder, so that Soukup could purchase certain property in Henrico County known as 5 Dilton Court. In February 1987, BAC purchased that property. The property was later sold and BAC used the proceeds to purchase, in its name, a condominium at

3100 Anglican Court. The husband and Soukup were residing at that address at the time this matter came before the trial court.

After the husband failed to comply with certain terms of the property settlement agreement, the wife filed a bill of complaint against the husband, Soukup, and BAC, requesting that the trial court order specific performance of certain provisions, including the continuing spousal support obligation and the requirements relating to health and life insurance. The bill of complaint also alleged that the husband made a fraudulent or voluntary conveyance of $268,000 to BAC. The wife requested that the deed to BAC for the Anglican Court condominium be set aside because it was acquired with funds from the sale of the Dilton Court property, which had been purchased solely with the funds supplied by the husband.

Although Soukup did not appear at the evidentiary hearing, her deposition testimony was admitted into evidence. The evidence before the trial court showed that, although Soukup was the president and sole shareholder in BAC, she was not a licensed real estate agent. Moreover, Soukup testified that BAC had never had any licensed real estate agents in its employ, nor had it been a broker for any real estate transactions. She also testified that BAC was not licensed by the Virginia Board of Realtors.

Soukup further testified that she considered the husband to be a silent partner in BAC. The purchase price of the Dilton Court property was $268,000, exactly the sum which the husband had given BAC for the purchase. Three years later, in March 1990, BAC sold the property for $408,250, and funds from that sale were used to purchase the Anglican Court condominium. At the time of these transactions in 1990, BAC was "inoperative and void" as a Delaware corporation because it had not paid its taxes as required under Delaware law.

The husband testified that he gave BAC $268,000 to fulfill his agreement to provide Soukup with a home, in return for the fact that she had given up everything she had to live with him, and in return for her gift to him of her love and affection. The husband also testified that he had not provided health insurance for the wife as required in their separation agreement. Further, he testified that the life insurance policy, which he had obtained pursuant to the agreement, had lapsed.

In its final order, the trial court found that the husband owed the wife $46,800 in past due spousal support. The court also ruled, however, that the wife had failed to prove by clear and convincing evidence that the husband had made a fraudulent conveyance to BAC. The court's final order did not address the issue whether the evidence established a voluntary conveyance, nor did it address the issues of life and health insurance raised by the wife. This appeal followed.

The wife first argues that the trial court erred in refusing to enter a decree requiring the husband to specifically perform his continuing obligation under the separation agreement to make future spousal support payments, as well as his obligations thereunder concerning health and life insurance. In response, the husband argues that the wife failed to prove her entitlement to this relief under New York law. Since the separation agreement provides that the laws of the State of New York must be applied in any interpretation of the agreement, the husband argues that, to obtain relief in the trial court, the wife was required to establish entitlement to such relief under New York law.

■ We find that the husband's argument here is procedurally barred. At the evidentiary hearing, the trial court asked counsel whether there was "any particular New York law interpretation in the contract that I need to be concerned about or is a contract a contract?" The husband's counsel responded: "I'm not familiar with any; I just don't know New York law." The trial court then stated: "All right, if there's anything in particular you want me to know about New York law[,] you're going to have to particularize it for me." Following this discussion, the husband never objected that the trial court's rulings, on the issues before us, were not based upon a consideration of New York law. Since he failed to raise any objection in this regard, either during the hearing or in the final order, we will not consider that argument here. Rule 5:25.

■ Turning to the merits of the wife's argument, we first consider the nature of the relief she requested. The decision whether to grant specific performance of a contract is a matter submitted to the sound discretion of the trial court. *Griscom v. Childress*, 183 Va. 42, 47, 31 S.E.2d 309, 312 (1944). Specific performance is an equitable remedy, which may be considered by the trial court where the remedy at law is inadequate and the nature of the contract is such that specific enforcement of it will not result in great practical difficulties. *Thompson v. Commonwealth*, 197 Va. 208, 212-13, 89

S.E.2d 64, 67 (1955). Although the granting of specific performance is not a matter of absolute right,

> [w]hen the contract sought to be enforced . . . has been proven by competent and satisfactory evidence, and there is nothing to indicate that its enforcement would be inequitable to a defendant, but will work injury and damage to the other party if it should be refused, in the absence of fraud, misapprehension, or mistake, relief will be granted by specific enforcement. ·

*Haythe v. May*, 223 Va. 359, 361, 288 S.E.2d 487, 488 (1982).

In *Wells v. Weston*, 229 Va. 72, 79, 326 S.E.2d 672, 677 (1985), this Court recognized that specific performance is an appropriate remedy for the enforcement of a continuing contractual obligation to pay spousal support. In *Wells*, the parties had entered into a property settlement agreement, the terms of which were later incorporated into their final decree of divorce. Under the agreement, the husband was obligated to pay the wife the sum of $500 per month spousal support for as long as the wife lived.

After the wife remarried, the husband stopped making the spousal support payments. The wife then filed a bill of complaint seeking specific performance of the spousal support provision.[1] The trial court denied the relief requested. Reversing the trial court's decision, this Court remanded the case "for the entry of a decree requiring specific performance by [the husband] of his contractual obligations to [the wife]." *Id.* at 79, 326 S.E.2d at 677; *see also Moore v. Moore*, 297 N.C. 14, 19, 252 S.E.2d 735, 739 (1979).

Also, in *Buchanan v. Buchanan*, 174 Va. 255, 6 S.E.2d 612 (1940), this Court recognized the power of a court of equity to decree specific performance of a continuing contractual obligation to pay child support. There, the parties had entered into a property settlement agreement, which was not incorporated into their final decree of divorce, providing for the husband to make monthly payments to the wife for the support of their minor children. When he failed to make support payments, the wife filed suit for specific performance of this contractual obligation.

This Court upheld the wife's right to sue for specific performance of the contract, emphasizing that equitable relief extended not

---

[1] The wife took this action in lieu of requesting a contempt order in the original divorce case for the husband's failure to comply with the terms of the divorce decree.

only to the collection of arrearages but also to "relief to cover payments thereafter falling due." *Id.* at 273, 6 S.E.2d at 619. Otherwise, there would be the possibility of endless suits and interminable litigation. *Id.* A remedy at law is not adequate if it is partial. Instead, "it [must] reach the end intended, and actually compel a performance of the duty in question." *Id.* at 274, 6 S.E.2d at 620. The Court then concluded that the wife's legal remedy was inadequate because it did not "reach the whole mischief, and secure the whole right of [the wife]." *Id.*

We perceive no distinction in the case before us that would warrant a contrary result. The wife did not have an adequate remedy at law because she either would have to sue on the contract each time the husband failed to make a payment, or wait until a significant arrearage had accumulated before filing suit. Under either option, her legal remedy would be inadequate to "reach the whole mischief." *Id.* Further, the husband's support arrearages were great and the trial court had no reason to believe that his future compliance would be forthcoming. Therefore, upon application of the above principles to the case before us, we conclude that the trial court abused its discretion in refusing to order the husband to specifically perform his contractual obligation to make support payments to the wife.

In accordance with the same principles, we hold that the trial court abused its discretion in failing to decree specific performance of the husband's life and health insurance obligations under the property settlement agreement. Pursuant to the rationale expressed in *Buchanan,* the wife has an inadequate remedy at law because enforcement of either obligation at law could require her to file endless suits to obtain her whole rights under the parties' contract. Each time the husband failed to pay a premium on either insurance policy, it could lapse, thereby requiring the wife to purchase similar coverage and bring suit against the husband each time she paid a renewal premium. Further, if the husband failed to cooperate in providing the necessary information for the wife to obtain an insurance policy on his life, she would have no remedy at law whatsoever in that regard.

The wife next asserts that the trial court erred in not awarding her interest from the date each payment became overdue. In response, the husband contends that the trial court did not err because the wife failed to compute all interest claimed and present the trial court with this information. The husband argues that, as a result, the wife

failed to meet her burden of proof under Code § 20-78.2[2] We disagree with the husband.

■ As this Court stated in *Alig v. Alig*, 220 Va. 80, 85, 255 S.E.2d 494, 497-98 (1979),

> the general rule is that in the absence of factors making it inequitable, interest should be assessed on unpaid installments of alimony from the date they mature or become due until the date they are paid.

The record before us contains no evidence showing an inequity that would result from the application of this general rule. Moreover, the husband has not asserted that there was such evidence before the trial court.

■ The wife is not barred from collecting such interest because she did not provide the trial court with a computation of interest due. By its plain language, Code § 20-78.2 places that burden on the moving party only "upon instruction of the court." The record before us does not show that the trial court requested the wife to make such a computation. Therefore, her failure to make the computation will not bar her recovery of those amounts.

The wife also argues that the trial court erred in failing to rule that the transfer of $268,000 from the husband to BAC was a voluntary conveyance as to her, because she was a creditor of the husband at the time the transfer occurred. In response, the husband argues that there was valuable consideration for the transfer, namely, Soukup's assistance in providing him a home and otherwise taking care of him. We disagree with the husband.

■ Code § 55-81 provides that a conveyance not made upon consideration deemed valuable at law is void as to creditors whose debts were contracted at the time of such conveyance. In the present case, the wife was a creditor of the husband because the property

---

[2] Code § 20-78.2 provides:

The entry of an order or decree of support for a spouse or for support and maintenance of a child under the provisions of this chapter or §§ 20-107.1 through 20-109 shall constitute a final judgment for any sum or sums in arrears. This order shall also include an amount for interest on the arrearage at the judgment interest rate if the person to whom such arrearage is payable requests that interest be charged. However, the burden shall be on the person to whom such arrearage is payable, upon instruction of the court, to compute all interest due at the judgment interest rate as established by § 6.1-330.10 and furnish this information to the court.

settlement agreement was made before the transfer occurred. The wife's status as a creditor is not altered by the fact that the agreement contained a contingency, which provided the husband relief from making a portion or all of the payments due for any period during which he was unemployed or suffered a significant decrease in income. Creditors of contingent debts are existing creditors for purposes of voiding a voluntary conveyance. *In re Porter*, 37 B.R. 56, 62 (E.D. Va. 1984); *see Foy v. Foy*, 447 So.2d 158, 163 (Ala. 1984); *First Nat'l Bank v. Hoffines*, 429 Pa. 109, 116, 239 A.2d 458, 463 (1968).

█ Also, the conveyance from the husband to BAC was not made upon valuable consideration. The husband testified that he made the transfer because Soukup "was giving up everything she had to join me and in return for that and her love and affection and such that I would supply her with a home." Since Soukup was married at the time of the conveyance, the testimony of the husband demonstrates that the conveyance was made as an inducement to Soukup to terminate her marriage. Such consideration is not deemed valuable at law because it is contrary to public policy.

█ As this Court stated in *Shelton v. Steward*, 193 Va. 162, 165, 67 S.E.2d 841, 842-43 (1951) (citation omitted), "[t]he rule is well established that any agreement whether between husband and wife or between either and a third person intended to facilitate or promote the procurement of a divorce is contrary to public policy and void." Therefore, in the case before us, since the conveyance was not made upon consideration deemed valuable at law, and since the wife was a creditor of the husband at the time of the conveyance, it was a voluntary conveyance, which was void as to the wife. Code § 55-81.

For these reasons, we will reverse the judgment of the trial court and remand this case to it for entry of a decree consistent with the principles and conclusions expressed in this opinion.

*Reversed and remanded.*