COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Annunziata and Senior Judge Cole
Argued at Richmond, Virginia


HAROLD FRANCIS SHEPPARD

MEMORANDUM OPINION[*] BY
v.         Record No. 0571-95-2          JUDGE MARVIN F. COLE
APRIL 9, 1996

CYNTHIA CAUDLE SHEPPARD


FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge


Carolyn P. Carpenter (Carpenter, Woodward &
Wagner, P.L.C., on briefs), for appellant.

Jeffrey L. Galston (Hyder, Lowe & Galston, on
brief, for appellee.


Harold Francis Sheppard, appellant, appeals from a final

order entered in the Henrico County Circuit Court on February 15,

1995.  He presents the following issues for our review:

>     1. Whether the trial court erred by including in
> its judgment $17,071.67 awarded by a North Carolina
> court, when wife had registered the foreign decree and
> begun execution;
>
>     2. Whether wife's claim for $17,071.67, plus
> interest, is barred by the doctrine of res judicata;
>
>     3. Whether the trial court erred in applying the
> doctrine of specific performance to enforce the foreign
> judgment;
>
>     4. Whether there was sufficient evidence to
> support the trial court's finding that husband failed
> to pay $900 per month on the Central Carolina Bank
> loan; and
>
>     5. Whether the trial court erred by failing to

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

give husband credits allowed him under the North Carolina order.

In addition to the above issues, Cynthia Caudle Sheppard, appellee, presents for our review the following:

1. Whether the trial court failed to give the North Carolina order full faith and credit; and

2. Whether the trial court erred in failing to recognize the North Carolina court order of specific performance.

Cynthia Caudle Sheppard (wife) and Harold Francis Sheppard (husband) were married in Guilford County, North Carolina, on March 11, 1987. They separated on or about April 16, 1989. They negotiated and executed a property settlement agreement dated May 26, 1989. The agreement was incorporated by reference into a divorce decree on November 30, 1990, in North Carolina Guilford County District Court. Later, husband brought an action against wife in the same court for rescission of the agreement on the ground that the agreement had been entered into under duress and undue influence, alleging that wife had breached the agreement. Wife filed a counter-suit, alleging that husband had breached the agreement and asking for specific performance of the agreement.

A jury trial was held on February 24, 1993, and the jury determined that the agreement was not entered into under duress or undue influence and that wife had not breached the agreement. The jury further determined the amount that husband owed wife under the terms of the agreement. In an order, nunc pro tunc on May 24, 1993, the court adjudged, ordered and decreed as follows:

1. Husband was ordered to pay to wife the sum of

-2-

$17,071.67, together with interest at the legal rate, from May 5, 1993, for arrearages due under the agreement.

2. Both parties were ordered not to make any further withdrawals from the equity line account at First Home Federal Savings and Loan Association (now Central Carolina Bank) and that all future payments made to the account would be applied to principal and interest owed on the account.

3. Specific performance of the agreement was decreed to the following extent:

(a) Effective March 1, 1993, husband was ordered to pay the principal and interest monthly payment on three loans encumbering wife's residence: City of Greensboro loan; HUD loan (now Windover Funding); and First Home Federal Savings and Loan Association (now Central Carolina Bank) loan.

(b) Husband was ordered to pay to wife $145.00 monthly toward utilities.

(c) Husband was ordered to pay to wife $227.50 monthly for spousal support, subject to a credit for any auto liability insurance premiums paid by husband on behalf of wife subsequent to June 30, 1991, and subject to a credit for rent received on wife's residence.

(d) Husband was ordered to pay $300 monthly to wife's attorneys as payment toward an award of $10,000 attorney's fees.

Husband moved from North Carolina to Henrico County, Virginia. On May 26, 1994, wife filed a Bill of Complaint in the Henrico County Circuit Court in an equity suit, seeking recovery of the amount of the North Carolina judgment as well as additional costs and arrearages since the entry of the North Carolina order on May 24, 1993. The prayer of her Bill of Complaint was that specific performance of the agreement and the

Guilford District Court's order be decreed and ordered, and that other general equitable relief be granted to her, including civil contempt and attorney's fees. Husband filed an Answer and special pleas of Res Judicata and/or Collateral Estoppel. Upon trial of the issues, wife was granted a recovery of $37,348.89, based upon the North Carolina outstanding judgment of $17,071.67, together with interest in the amount of $2,048.60, additional arrearages in the amount of $13,228.62, and $5,000 in attorney's fees. Husband has appealed the court's decision.

In addition to the suit, wife registered the North Carolina judgment order in the clerk's office of the Henrico Circuit Court under the provisions of Code § 8.01-465.2.

Husband contends that the trial court erred when it entered a judgment in the amount of $17,071.67 against him because a judgment in the same amount arising out of the same facts had been granted in North Carolina, making two judgments against him for the same cause of action. He concludes that the doctrine of res judicata bars this Court from entering a second judgment. Furthermore, he alleges that the North Carolina judgment has been registered in the Henrico County Circuit Court and a second judgment in Virginia is improper. In this case, a North Carolina court has entered a valid judgment against the husband and has decreed specific performance of the terms of a valid property settlement agreement. The status of the North Carolina agreement has been determined in North Carolina and a North Carolina court

has ordered specific performance of the agreement.  Payment of the arrearages and future installment payments have become absolute and vested in North Carolina.

Even if the courts of Virginia were not compelled to do so under the full faith and credit clause of the federal constitution, "upon principles of comity they may establish as their own decree a foreign decree . . ., with the same force and effect as if it had been entered in Virginia, provided, of course, the foreign decree violates no public policy of Virginia."  See McKeel v. McKeel, 185 Va. 108, 113, 37 S.E.2d 746, 749 (1946).  Moreover, such a result now seems required by the Uniform Interstate Family Support Act, Code § 20-88.32, et seq.  See also Code § 8.01-465.2; Alig v. Alig, 220 Va. 80, 84, 255 S.E.2d 494, 497 (1979).  We find no merit to the husband's contention.  Furthermore, we find the doctrine of res judicata not applicable.  The Henrico Circuit Court has not entered a separate and independent judgment against husband.  The proceeding here is ancillary to the North Carolina judgment in an effort to enforce the terms of a judgment of a sister state.

Both husband and wife raise the issue whether the trial court should have applied the doctrine of specific performance.  As we view the record, the court did not grant specific performance of the property settlement agreement or the North Carolina judgment.  In a letter to counsel, the trial judge stated he assumed husband would comply with the terms of the

agreement.  The North Carolina order decreed specific performance of the agreement.

Our Supreme Court has upheld the wife's right to sue for specific performance of a contract for spousal support, emphasizing that equitable relief extended to collection of arrearages and "to 'relief to cover payments thereafter falling due.'"  Chattin v. Chattin, 245 Va. 302, 307-08, 427 S.E.2d 347, 351 (1993) (citation omitted).  The Court further stated:

> The wife did not have an adequate remedy at law because she either would have to sue on the contract each time the husband failed to make a payment, or wait until a significant arrearage had accumulated before filing suit.  Under either option, her legal remedy would be inadequate to "reach the whole mischief."  Further, the husband's support arrearages were great and the trial court had no reason to believe that his future compliance would be forthcoming.

Id. at 308, 427 S.E.2d at 351 (citation omitted).  See also Hupp v. Hupp, 239 Va. 494, 391 S.E.2d 329 (1990).

In accordance with the same principles, we hold that the trial court abused its discretion in failing to decree specific performance of the property settlement agreement as was done in the North Carolina order.

Husband contends that the evidence was insufficient to support the trial court's finding that he should pay $900 monthly on the equity line loan with Central Carolina Bank, successor to First Home Federal Savings and Loan Association.  The North Carolina judgment requires that husband pay "the principal and interest required pursuant to the terms of the equity line loan."

-6-

The record establishes that Central Carolina Bank requires only the interest payment at the present time and does not require any contribution toward principal. Therefore, we hold that the trial court erred in assessing an additional $400 monthly charge against husband. Husband is entitled to an adjustment of $400 per month for each month that is included within the arrearage of $13,228.62. If the bank should adjust its requirements in the future, the amount to be paid by the husband shall likewise be adjusted. In other words, husband is required to pay "the principal and interest required pursuant to the terms of the equity line loan." Since the record does not reflect the number of months charged to the husband, we remand the case back to the trial court to make such determination and give credit to the husband for the amount included, if any.

Husband claims that the trial court's decision fails to give him credits for rent on the wife's residence, liability insurance on her automobile, mortgage interest tax deduction received by wife, and payments he made to her in the amount of $1,887.23.

The North Carolina judgment provides that "any rent proceeds which the [wife] should henceforth receive from a boarder in her home should be a credit against any amounts payable by the [husband] under the aforesaid separation agreement and property settlement." Husband asserts that he should be given a credit at the rate of $350 per month for the period March 1993 through October 1994 totaling $7,000. He also contends that he should

receive a credit of $350 per month for the period from August 1993 to March 1994 when she provided free room and board for her nephew. This amounts to $2,800, making a total credit of $9,800 for rent.

The wife testified that she gave husband a credit of $250 monthly from March 1993 through June 1993. Her boarder changed jobs and could not pay $250 monthly. In order to keep her, the rent was reduced to $100 monthly from July 1993 through June 1994. In June 1994 wife found out that her residence was in a historic district and that she could not charge rent because it was a one-family unit. Thereafter, she received no rent but permitted her boarder to remain because she was scared to live there alone. In her calculations, husband was given a credit of $1,700 for rent. She made no charge to her nephew for rent. We find credible evidence in the record to support the conclusion that wife has given a credit to husband for all sums she received as rent. The agreement did not require her to rent any part of her residence or make any attempt to fix the rent she would charge.

Husband claims that he is entitled to a credit of $755.59 that he paid on behalf of wife for automobile liability insurance from March 1993 until October 1994. He claims a similar credit of $1,045.77 for sums he paid from June 30, 1991 to March 1993, making a total of $1,801.36.

The agreement dated May 26, 1989, provided the wife was

entitled to possession of the Acura automobile from the date of the agreement until husband purchased a new car for wife, at which time the Acura was to be transferred to husband. Husband agreed to purchase a new car comparable to a new 1989 Honda Accord for wife within six months from the date of the agreement. Husband also agreed to pay the automobile insurance on the car for one year from the date of purchase of the new vehicle.

The new car was purchased on June 30, 1990, and husband paid the liability insurance through June 30, 1991. Husband claims he is entitled to a credit for liability insurance premiums he paid on behalf of wife after June 30, 1991. The trial judge found that he did not prove this claim by a preponderance of the evidence.

Husband's exhibit 7 documents insurance coverage for the period ending January 14, 1991, which is irrelevant to the period involved in this claim. The two other exhibits related to husband's claim are confused and erroneous. Therefore, we find credible evidence in the record to support the decision of the trial court that this claim for credit was not proved.

Husband contends that he is entitled to a credit of $1,472.27, the value of the tax benefit received by wife for a mortgage interest tax deduction. The record establishes that husband was not entitled to a tax deduction for interest paid on the residence mortgage, although he made the mortgage payment, because he did not own or reside in the home. Therefore, husband

agreed to wife taking the deduction.  She never agreed to give him a credit and he was not entitled to the deduction.  The trial court did not err in refusing to grant a credit to husband for the tax deduction.

Husband claims that he made payments to wife pursuant to the terms of the property settlement agreement in the amount of $1,887.23.  The claims presented do not prove that they represent expenses for which wife is responsible under the terms of the agreement.

For the above reasons, we reverse the decision of the trial court and remand for further proceedings for modification of its decree as follows: (1) award specific performance in accordance with the terms of the North Carolina decree; (2) adjust the arrearage figures to reflect any credit due husband for amounts he paid in addition to the $500 monthly interest payment on the Central Carolina Bank loan; (3) modify the decree to include interest at the North Carolina legal rate from October 31, 1994, until paid; and (4) adjust the decree to include a reasonable attorney's fee and court costs to wife for this appeal.

                                    <u>Reversed and remanded for
                                    further proceedings.</u>