# Richmond

## THE NATIONAL SAVINGS AND TRUST COMPANY, ETC., ET ALS. v. RUTH LESTER BUCHANAN, ETC.

November 20, 1944.

Record No. 2846.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*J. Donald Richards, Harvey Jacobs, Walter M. Bastian, Jerome F. Barnard* and *G. Bowdoin Craighill,* for the appellants.

*John S. Barbour,* for the appellee.

GREGORY, J., delivered the opinion of the court.

Ruth Lester Buchanan and other creditors who had obtained judgments against John R. Buchanan filed a bill of complaint against him, seeking to enforce the liens of their respective judgments by a sale of certain real estate which had been devised by James A. Buchanan to his executors and trustees for the benefit of his three children, Helen Jones, Francis James Buchanan, and John R. Buchanan. Ruth Lester Buchanan was the former wife of John R. Buchanan. He obtained a divorce from her in Nevada, on July 27, 1931, and they had entered into a written contract settling their financial affairs and making provision for the custody, maintenance and education of the children. See *Buchanan* v. *Buchanan,* 170 Va. 458, 197 S. E. 426, 116 A. L. R. 688, and *Buchanan* v. *Buchanan,* 174 Va. 255, 6 S. E. (2d) 612.

James A. Buchanan, a former brigadier general of the United States army and a resident of the District of Columbia, departed this life in 1926, testate, and his will, together with the ·codicils attached, was probated there. One H. Prescott Gatley, and the National Savings and Trust Company of Washington, D. C., were named executors and trustees under the will, and they duly qualified as such before the Probate Court of the District of Columbia. Gatley departed this life, leaving the National Savings and Trust Company as sole surviving· executor and trustee.

The· testator left a large and valuable estate, and among the assets were two farms in Virginia, one known as Leny Manor, in Fauquier county, and the other known as Ayrshire, in Loudoun county.

The Leny Manor farm was occupied by John R. Buchanan and his wife, Ruth Lester Buchanan, prior to the death of James A. Buchanan, and they continued to reside there until a short time before the divorce was obtained by John R. Buchanan from Ruth Lester Buchanan in Nevada. Afterwards John R. Buchanan continued to reside at Leny Manor.

The judgment creditors in this cause are seeking to have the interest of ·John R. Buchanan in· the two Virginia farms partitioned and allotted to him and afterwards subjected to the satisfaction of their liens.

In order to ascertain the interest of John R. Buchanan in the two farms it becomes necessary to construe the will of James A. Buchanan.

John R. Buchanan was named as a party defendant to the bill of complaint but no service of process was had upon him and he has not appeared in this litigation. It is claimed that he was living at Palm Beach, Florida, and he therefore was proceeded against by order of publication. The National Savings and Trust Company, the trustee and executor under the will, is a banking institution in Washington, D. C., and it has never been domesticated in Virginia or otherwise qualified to do business in Virginia. The Fauquier National Bank and Walter H. Robertson, trustee, are not interested in the present controversy.

After the suit had matured, Helen Jones, Francis James Buchanan and the National Savings and Trust Company, surviving trustee and executor, filed their answers.

A motion was made to strike the answers, and this motion was sustained, and thereupon, in open court, Helen Jones, Francis James Buchanan and the National Savings and Trust Company, surviving trustee and executor, filed their supplemental answers, and the cause was heard upon the bill of complaint and the answers, which raised the question of the proper construction of the will of James A. Buchanan, deceased. Later, the sheriff of Fauquier county was appointed a commissioner to advertise and sell at public auction, on the premises, all the tangible personal property of John R. Buchanan, and to bring the proceeds into court. This he did. On November 23, 1942, the sheriff's report was approved by the master commissioner, showing the sale of the personal property for the gross sum of $15,224.

The cause was referred to a master commissioner in chancery to ascertain and report whether the real estate in Virginia was capable of partition in kind among the three children of the testator, with or without owelty of partition, and whether "Leny. Manor" could be assigned to John R. Buchanan as and for his one-third share, and "Ayrshire" could be assigned to Francis and Helen as and for their shares, with or without owelty of partition, as may be just, and to recommend to the court a scheme of partition. He was also directed to report the fee simple and annual value of the lands that might be allotted to John R. Buchanan or his interest in the entire lands if no just partition is practicable. He was also directed to state an account of the liens and taxes against John R. Buchanan and other matters not pertinent here. By agreement, this decree of reference has not been executed.

Paragraph tenth of the said will was construed by the lower court and must also be construed by this court.

In paragraph eighth of the said will, the testator bequeathed to his trustees all of his shares of the capital stock in Bristol Myers Company, a corporation having its prin-

cipal office in the city of New York, in trust for the use of his three children, namely, Helen Jones, Francis James Buchanan, and John R. Buchanan. They were to receive the income, dividends, and profits in equal amounts for their lives, but they were not to receive the stock.

In paragraph ninth other directions were given and powers conferred upon the trustees which are not material to paragraph tenth.

In paragraph tenth the testator provided, "all the rest, residue and remainder of my estate, real, personal and mixed, of any and of every kind and description whatsoever, and wheresoever situated, as well property which I may hereafter acquire as property which I now own and possess, I give, devise and bequeath to the said National Savings and Trust Company and H. Prescott Gatley, and the survivor of them, absolutely and in fee simple, but nevertheless, upon and subject to the following trusts". Following this bequest to his trustees, the testator gave certain directions and granted certain power and authority to the trustees in connection with the collection of rents and profits upon the residuary estate, and the payment of all taxes and assessments against the property from time to time.

Then follows this language:

"Provided, Nevertheless, that my country residence 'Ayrshire', and the lands connected therewith and pertaining thereto, in the county of Loudoun, State of Virginia, shall not be sold by said trustees, so long as my daughter Helen and my son Francis, or either of them, shall desire to reside there. * * * In the event my said daughter and son, or either of them, shall elect to make said residence their home, they shall, during such time they, or either of them, make it their home, pay all taxes and insurance thereon and all expences and charges necessary to the proper maintenance and upkeep thereof".

Immediately following that provision is found this language:

"PROVIDED, further, that my farm 'HEARTLANDS', situate near the town of Warrenton, in the State of Virginia, now occupied as a home by my son John, shall not be sold by said trustees, so long as my said son desires to reside there. * * * In the event my said son shall elect to make said 'HEARTLANDS' his home, he shall, during such time as he makes it his home, pay all taxes and insurance thereon, and all expenses and charges necessary to the proper management and upkeep thereof." "Heartlands" is now "Leny Manor".

Still continuing, the testator uses this language:

"It is my will and I hereby further direct that my said residuary estate, subject, nevertheless, to the provisions and conditions in respect of my said country residences herein-before made, shall be held by the trustees hereunder, IN TRUST, in equal shares for my said three children, subject to the following provisions, that is to say: * * * ".

The testator then provides that one-third of the said residuary estate shall be held in trust for the use and benefit of his daughter during her lifetime, and the surplus of rents, income and profits arising from her one-third part shall be paid to her quarterly so long as she may live, for her sole and separate use, free from the control or interference of her present or any future husband.

The testator then provides that one-third of his said residuary estate shall be held in trust for the use and benefit of his son, John R. Buchanan, "and the surplus of rents, income and profits of said one-third interest, over and above all proper costs and charges shall be paid over to him until he attains the age of thirty-five years, when the principal or corpus of said one-third share shall be paid over to him".

The testator then provides that one-third of the said residuary estate shall be held in trust for the use and benefit of his son, Francis James Buchanan, and the surplus of rents, income and profits on his one-third interest is to be paid over to him until he attains the age of thirty-five years

"when the principal or corpus of said one-third share shall be paid over to him".

It was further directed by the testator that his son, John, and his son, Francis,. "after the latter attains thirty years of age, shall have power to dispose of their entire respective shares or portions of my residuary estate by a last will and testament". This power was never exercised by either of them.

In addition to the powers conferred upon the trustees, were these: They were granted power to continue any investment made by the testator in his lifetime until time of distribution called for under paragraph tenth; they were also empowered, during the continuance of the trust, to sell any or all of the property then belonging to the residuary estate, except as hereinbefore directed and provided, and to make bills of sale, deeds, and other instruments that might be necessary; they were also empowered to lease any or all of the real estate belonging to the residuary estate for such term or terms of years not exceeding ten years from the date of the will; and they were granted the power to make ordinary repairs to the property belonging to the residuary estate, and to keep the buildings and personal effects insured against loss by fire.

Then follows this significant language:

"PROVIDED ALWAYS and I hereby authorize my said trustees, or the successor in the trust created in and by this, PARAGRAPH TENTH, of this, my will, at any time or times in their discretion, to partition or allot my said residuary estate, both real and personal or any part or parts thereof, among or to the actual or presumptive objects of said trusts, or any such objects, in satisfaction wholly or in part, of their, his or her shares or share of said residuary estate, in such manner, and charged or not with such sum or sums for equality of partition, as said trustees shall think right, with power in said trustees to determine the value of the property so partitioned or allotted, by valuation or otherwise, as they shall think best and proper, and I declare that any such

determination shall be conclusive and binding on all persons interested in my said residuary estate, or any part thereof under the trusts created in and by this, PARAGRAPH TENTH, of this, my will; and I hereby authorize my said trustees or the successor in trust, to make, execute and deliver such good and sufficient deeds, bills of sale, instruments of transfer and all other writings necessary or proper to transfer and convey the property, absolutely as to the personal estate and in fee simple as to the real estate, as allotted or partitioned".

The chancellor below, in construing paragraph tenth, by his decree, held as follows:

" * * * being of opinion that under the provisions of the tenth paragraph of the will of James A. Buchanan, deceased, that the defendants, John R. Buchanan and Francis James Buchanan, each took an undivided one-third interest, respectively, in the rents, issues and profits arising from the residuum of said estate, of which both said farms, that situated in Loudoun county, Virginia, known as 'Ayreshire', and that situated in Fauquier county, consisting originally of two separate but adjacent parcels, one known formerly as 'Heartlands' and the other as 'Jackquelin' or the Courtland Smith farm, and both now known as 'Leny Manor', form parts, during the periods, if any, elapsing between the dates of the death of the testator and the dates at which they respectively attained the age of thirty-five years, and the trustees for Helen Jones became entitled to the remaining one-third for her life, with a power of appointment by will of the remainder in said one-third as in said paragraph directed; that the provision in said paragraph ten granting to Francis James Buchanan and John R. Buchanan, respectively, the right to dispose of the remainder in their several one-third interests in said residuum on attaining respectively the age of thirty, was intended to grant to each the power to exercise this privilege, severally during the periods, if any, which might elapse between such dates and the dates at which they might respectively attain the age of thirty-five years; that as they respectively attained the age of thirty-five years each became en-

titled in fee to have a full one-third interest in said residuum allotted and set apart to them, respectively, and one-third to be held by the trustees under said will for Helen Jones for life with power of appointment as aforesaid, and that the power of partition—, vested in the trustees under said will, was for the purpose of enabling them 'at any time in their discretion to partition or allot * * * said residuary estate, both real and personal or any part or parts thereof among or to the actual or presumptive objects of said trusts, or any of such objects in satisfaction wholly or in part of their, his, or her share or shares of said residuary estate in such manner, and charged or not with such sums for equality of partition as said trustees shall think right', whether before or after all had attained the stated ages, subject only to the options of occupancy pending such partitions or allotments granted said John R. Buchanan to occupy Leny Manor and granted Helen Jones and Francis James Buchanan jointly and/or severally to occupy Ayreshire as homes, all to the end that such equality of partition should be attained and delivery of the several estates to the several parties entitled thereto might be accomplished by the time the youngest son attained the age of thirty-five years, or within a reasonable time thereafter, and that it was not the purpose of the testator to postpone either such allotment or partition, or such vesting of said estates indefinitely in the future, so long as any one or the beneficial devisees of said estates desired to occupy either as a residence; that said John R. Buchanan's creditors are now entitled to have his full share of said property partitioned and allotted to him, and if it can be reasonably so done that the Leny Manor farm should be set aside to him with or without owelty of partition, and to have the same so allotted, subjected to their debts and the liens thereon in their proper order * * * ".

The two Virginia farms are not of equal value. "Ayrshire" is much more valuable than "Leny Manor".

It is alleged that the value of the estate placed in trust in paragraph eighth, which consisted entirely of the testator's stock in the Bristol Myers Company, was approximately

$3,000,000, and that it produced an income of $120,000 per annum, or $40,000 for the use of each of the three children, and that the value of the estate placed in the residuum in paragraph tenth was approximately $1,000,000. The residuum consisted of various properties, real and personal, in Washington, D. C., in addition to the two Virginia farms, and it is conceded that all of the residuum except the two Virginia farms has been distributed as follows: One-third to the trustees for the use and benefit of Helen Jones for her life, and one-third to each of the sons who have long since attained the age of thirty-five years.

It is observed from the express language used in paragraph eighth that the testator intended and did pass to the trustees all of his stock in the Bristol Myers Company, and provided that it should be held by them *in solido*, with only the income or dividends going to the three children. He did not provide that this stock should ever be divided in three shares and then distributed to his children. They were never to receive the corpus of the trust.

The residuary clause in paragraph tenth was just the reverse. There the testator provided in express terms not only that the income should go to the three children in equal shares, but also that the residuum itself should be divided into three shares as follows: A one-third share to the trustee at once for the use of Helen during her life, and a one-third share each to the two sons when they attained the age of thirty-five years. In order to more perfectly effectuate his intention to divide the property which was devised in the residuary paragraph tenth, he made a special provision in which he expressly directed that the residuary estate be divided, partitioned and allotted, and in that provision which has already been quoted, he made no exception of his two Virginia farms, nor did he otherwise limit the power of the trustees to divide the estate.

The contention of the appellants that there could never be a partition or division of the Virginia farms so long as they desired to reside upon them cannot stand the test of the partitioning provision just referred to. They were given the

right to occupy the Virginia farms as long as they desired, and during their occupancy the trustees were not allowed to sell them, but this right of occupancy was subject to the limitation "provided always", that the lands might be partitioned in kind among them. The words "provided always" made their option of occupancy conditional. The condition was that partition might be made of the Virginia farms, in which event the occupancy might or might not be disturbed, depending upon whether Leny Manor could be allotted to John R. Buchanan, and Ayrshire allotted to Francis and Helen with or without owelty of partition. If this could be done their occupancy would not be disturbed.

The contention that the right of the three children to occupy the farms as long as they desired to do so created in them a life estate is without merit. Even if it did, there was no remainderman provided for after the life estate, and as to the remainder there would have been intestacy, which, of course, the testator never intended.

The theme of equality permeates the entire will of the testator, and especially his residuary estate in paragraph tenth. The division of the corpus between the three children was to be equal. The one-third share of Helen was to be held by the trustees, while the one-third share of each of the two sons was to be turned over to them at the age of thirty-five years. How could this distribution be made equally between them if the Virginia farms could not be partitioned and divided? The testator never intended that the occupancy of the farms by his children could or would defeat the orderly distribution of his residuary estate. As a matter of fact, he has, in effect, said by his will that the Virginia farms shall be divided, whether they are being occupied by the children or not, for he does not except them from the division and allotment provision of his will in paragraph tenth. He expressly provides that the residuary estate, both real and personal, is to be divided and partitioned. He does not make any exceptions. He is bound to have meant that so long as there was no partition or allotment of the Virginia farms the children could make their

homes there and the trustees were not to make sale of them during that time. The partitioning provision in paragraph tenth is predominant, without it there could be no equal distribution of the residuary estate.

The appellants, by a somewhat strained process of reasoning, in effect, contend that inasmuch as the testator created in paragraph eighth a spendthrift trust in the Bristol Myers stock, and it having been intended to place this stock beyond the reach of the creditors of his children so as to protect them from want and inconvenience by reason of the vicissitudes of life, he also intended the privilege of occupancy of the Virginia farms to be a life estate in the respective farms in his child or children who elected to occupy them, and that in order to continue to protect them from want the supposed life estates were in the nature of spendthrift trusts and beyond the reach of their creditors.

The answer to this contention is that the Virginia farms were not placed in the spendthrift trust in paragraph eighth. Only the Bristol Myers stock was so placed. Nowhere in the will is there found any language from which it could be shown or even remotely implied that the testator ever intended to place the shares of his sons in the Virginia farms beyond the reach of their creditors.

We are of opinion that the chancellor below has correctly construed paragraph tenth.

The objection to the court striking the original answers was cured when the appellants filed supplemental ones and went to a hearing upon the bill and those answers.

The surviving trustee under the will is not qualified to execute the trust in Virginia. See Code, sec. 4149 (3) (Michie). It must now be executed by the court.

Under Code, sec. 5279 (Michie), a lien creditor of any owner of an undivided estate may compel partition for the purpose of subjecting the estate of his debtor to the satisfaction of his lien.

The decree is affirmed.

*Affirmed.*