# Richmond

## ALLAN T. SHEPHERD v. RICHMOND ENGINEERING COMPANY, INC.

January 14, 1946.

Record No. 2960.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Haw & Haw*, for the appellant.

*McGuire, Riely, Eggleston & Bocock*, for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

This appeal brings here for review a decree entered by the Law and Equity Court of the city of Richmond, construing a written contract of employment entered into between the appellee and appellant. The contract involved is dated July 20, 1932, and sets forth the pertinent terms thereof as follows:

Appellant, under paragraph (2) of the contract, was to devote his time to his duties as sales manager of the appellee, but with the privilege of selling certain goods of the Fuel Economy Company, Inc., and acting as sales representative of the Armstrong Machine Works. His compensation was provided for in paragraph (6) of the contract, which reads:

"As compensation for his services, Allan T. Shepherd shall receive fifty per cent (50%) of the net profit on all merchandise sold by his agents or himself, and this profit shall be determined by deducting from the gross selling price the cost of all labor and materials used in the manufacture of the articles sold, all commissions paid on sales made, and all royalties due for the privilege of manufacturing any of these articles, and also the operating overhead expenses of the Company, which shall be determined by applying to these articles the same rule applied by it to other articles of merchandise which it manufactures and sells."

Paragraphs (7) and (8) are as follows:

"Settlements between the parties shall be made in cash as of January 1st and July 1st of each calendar year during the continuance of the relationship hereunder, but during the period of six months immediately following the date of this agreement, Engineering Company will allow Allan T. Shepherd a monthly drawing account not to exceed Three Hundred Dollars ($300.00), which shall be deducted from his share of the profits at the first semi-annual settlement between the parties. In making these settlements, profits are to be considered made only when customers shall have paid in cash all obligations or evidence of debt. After termination of drawing account referred to above, if there is not sufficient cash profit to give Shepherd as his share an average of Three Hundred Dollars ($300.00) per month, the Company will allow Shepherd to draw this amount against his share of profits, if any, for a further period of twelve months, during which period and for this purpose only, notes and other evidence of debt shall be treated as profits.

"8. All net commissions earned by the party of the second part under his contract with Armstrong Machine Works and other manufacturers shall be divided equally with the Company, just as profits made on sales effected through agents appointed by him, but, for his convenience, he shall not be required to make any accounting or settlement of these commissions or any payment to the Company

on account thereof until the semi-annual settlement as of July 1, 1933."

This contract was terminated May 15, 1935.

On June 29, 1938, appellee brought an action at law against appellant, in the Law and Equity Court of the city of Richmond, to recover the sum of $6,913.61, claimed to be due by appellant under the terms of the contract.

The notice of motion for judgment contains this allegation:

"The sum so stated as owing by you represents the excess of advances made to you by the Richmond Engineering Company, Incorporated, over and above your share of the net profits realized on sales made by you or your agents during the period of your employment by the Richmond Engineering Company, Incorporated, as its sales manager. These advances were made, and net profits were realized, pursuant to the provisions of a contract entered into between you and the Richmond Engineering Company, Incorporated, on the 20th day of July, 1932. After the execution of this contract, paragraph 7 thereof was modified so as to provide that advances made to you on your drawing account could properly exceed Three Hundred Dollars ($300.00) per month, and that such advances could properly be made over an indefinite period rather than for a limited period only, as was first provided in paragraph 7 of the contract. The construction placed on this contract at all times, both at the date of its execution, and after its modification, both by you and by the Richmond Engineering Company, Incorporated, was that you should be personally liable to the Richmond Engineering Company, Incorporated, for any excess of advances made to you on your drawing account over and above your share of the net profits earned, which construction you have, since the execution and modification of this contract expressly admitted to be correct."

On the trial of this action a jury was waived and all matters of law and fact were submitted to the trial court for final determination. On April 3, 1940, the court being of opinion that the contract nowhere provided for the repay-

ment of the funds charged to the drawing account of appellant, and that the contract created no obligation on appellant to repay to appellee the amount claimed in the notice of motion, entered a judgment in favor of appellant. No appeal was allowed from that judgment.

On the 3rd Monday in June, 1940, appellee instituted a suit in chancery in the Law and Equity Court, for the purpose of having an accounting and securing a judgment against appellant for fifty per cent. of the Armstrong commissions claimed to be due under paragraph (8) of the contract. In this suit the chancellor decreed a judgment against appellant in the principal sum of $4,320.72. It is from that decree this appeal was allowed.

Four errors are assigned. In the view we have of the cause, the determinative question is the action of the chancellor in overruling the plea of *res adjudicata* and estoppel filed by appellant which called for a construction of the contract herein involved.

The plea filed reads as follows:

"The defendant comes and says that the plaintiff may not maintain this suit against the defendant because in an action of law hertofore instituted and conducted in the Law and Equity Court of the City of Richmond, Virginia, wherein the plaintiff herein was the plaintiff and the defendant herein was the defendant, the court in construing the contract asserted as the basis of the plaintiff's claim herein, held that there was no obligation under the terms of the contract whereby the defendant was required to pay to the plaintiff any compensation which he had received pursuant to the provisions of the contract, all of which is shown by a certified copy of the order of the court, which is hereto annexed to be read and considered a part hereof.

"Wherefore the plaintiff says that the matters in issue in this suit have already been adjudicated."

It is the contention of appellant that the contract between the parties was entire and indivisible, and the appellee's election to proceed by notice of motion in the law forum is a complete bar to recovery in a chancery suit.

In *Buchanan* v. *Buchanan*, 174 Va. 255, 6 S. E. (2d) 612, Mr. Justice Holt stated this applicable doctrine:

"Primarily the question of whether a contract is entire or severable is one of intention, which intention is to be determined from the language which the parties have used and the subject-matter of the agreement. A contract may be both in its nature and its terms severable and yet rendered entire by the intention of the parties.

"To arrive at this intention, regard is to be had to the situation of the parties, the subject matter of the agreement, the object which the parties had in view at the time and intended to accomplish."

In *Jones* v. *Morris Plan Bank*, 168 Va. 284, 191 S. E. 608, Mr. Justice Gregory, after citing numerous authorities, laid down a rule which is the prevailing law in this Commonwealth. There it is said:

"The well established rule forbidding the splitting of causes of action is clearly stated in 1 Am. Jur., 'Actions,' section 96. It is there said: 'One may bring separate suits on separate causes of action even if joinder of the separate causes in one action is permissible, subject, however, to the power of the court to order consolidation. On the other hand, one who has a claim against another may take a part in the satisfaction of the whole, or maintain an action for a part only, of the claim, although there is some authority to the effect that a part of a demand cannot be waived for the purpose of giving an inferior court jurisdiction. But after having brought suit for a part of a claim, the plaintiff is barred from bringing another suit for another part. The law does not permit the owner of a single or entire *cause* of action or entire indivisible demand, without the consent of the person against whom the cause or demand exists, to divide or split that cause or demand so as to make it the subject of several actions. The *whole cause* must be determined in one action. If suit is brought for a part of a claim, a judgment obtained in that action precludes the plaintiff from bringing a second action for the residue of the claim, notwithstanding the second form of action is not

identical with the first, or different grounds for relief are set forth in the second suit. This principle not only embraces what was actually determined, but also extends to every other matter which the parties might have litigated in the case. The rule is founded upon the plainest and most substantial justice, namely, that litigation should have an end and that no person should be unnecessarily harassed with a multiplicity of suits.' "

There being no dispute as to the rule of law applicable when a contract, mutually entered into, shows upon its face that it is a contract indivisible in its nature and entire in its provisions, the only question here presented is, is the contention of appellant well founded? In our opinion it is.

Our construction of the contract is as follows:

Shepherd sold all of his time and energy to the company, with the provision that he could do certain other specified work. He could dispose of the assets of his old fuel company, The Fuel Economy Co., Inc., for one thing, and he could continue his employment as a representative of the Armstrong Company for another thing. The compensation for his employment, by and under his agreement with the Richmond Engineering Company, came out of the commissions he received for selling products of his employer and products of the Armstrong Company, in both of which operations his employer shared in the profits. He was working for the Richmond Engineering Company on both accounts. His salary, therefore, came under a single indivisible contract, a contract providing for fifty per cent. of commissions on the Richmond Engineering products and one-half of fifty per cent. of the net profit on sales for the Armstrong Company. His advancements from the Richmond Engineering Company were in contemplation of his earnings from both sources. If he earned more than the advancements, the Richmond Engineering Company would have to pay the difference to him. If he earned less than the advancements, he would have to return the difference to his employer, provided there was a promise of repayment.

There is no doubt that every matter in issue between the parties could have been settled in a chancery proceeding or in the action at law. Some aspects of the contract are in the nature of a partnership. To divide this contract, the division being created through no fault of Shepherd, means a multiplicity of suits contrary to the policy of the law.

When the policy at law was instituted, all alleged claims against appellant were due and payable, under the provisions of section 6236 of the Code of Virginia. Appellee had the right, in addition to its claim for overpayment to appellant, to file interrogatories, and to require appellant to file an accounting setting forth his commissions derived from the Armstrong account, and thus, if entitled thereto, could have recovered a judgment for the entire amount alleged to be due. On the other hand, appellee had the undisputed right to institute a suit in equity against appellant, praying for an accounting and the ascertainment of the amount due, if any.

That appellee must stand or fall by its election of remedies is fundamental.

It follows that the decree of the lower court must be reversed and judgment for the appellant will be entered in this court.

*Reversed.*