## Richmond

### McGuire & Others v. Brown, Guardian, & Others.

#### November 21, 1912.

1. CONTRACTS—*Construction—Intention of Parties—Case in Judgment.*
   In the construction of written instruments, courts seek to
   ascertain and give effect to the intention of the parties, and in
   seeking the intent, regard is to be had to the situation of the
   parties, the subject matter of the agreement, and the object
   which the parties intended to accomplish. A construction which
   would be unreasonable and unequal should be avoided, if it
   can be done consistently with the tenor of the agreement, and
   that construction should be favored which best accords with
   the presumed intention of the parties. So construing the agree-
   ment in the case in judgment, it was personal between the
   parties thereto, by which one engaged the services of another
   to sell his land for a stipulated compensation.

2. CONTRACTS—*Personal Services—Assignability.*—Where the personal
   services of another are expressly contracted for, or are neces-
   sarily involved in the subject matter of the contract, the con-
   tract is founded on personal trust and confidence, and is not
   assignable until the services have been performed.

Appeal from a decree of the Circuit Court of Tazewell
county. Decree for the complainants. Defendants ap-
peal.

*Affirmed.*

The opinion states the case.

*Greever & Gillespie* and *M. O. Litz,* for the appellants.

*Henry & Graham* and *E. R. Boyd,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

This litigation arises out of the following agreement:

"We agree and bind ourselves to pay W. H. Brown one-half of the money we get for our interest in two tracts of land lying on the Fork Ridge of Dismal, in the county of Buchanan. Said tract contains 1270 or 1320 acres, more or less, and we are not sure which number of acres is correct, which interest is one-thirteenth part of said land. Said land was owned by Joseph C. Brown at the time of his death. We further agree to sell said land at a price agreed upon between us and said W. H. Brown, and if we fail to agree upon a price, then we are to select two other men, one to be selected by W. H. B. and the other by us, who shall fix a price on it.

"Witness our hands and seals, this the 21st day of January, 1887.

"JAS. R. BROWN    (Seal.)<br>
"NANNIE E. BROWN    (Seal.)

"Witness:
   "J. B. HURT,
   "JAS. M. McGUIRE."

Upon said agreement appears the following assignment: "For value received, I assign this contract and obligation to Jas. M. McGuire. All the interest vested in me is hereby transferred to said McGuire.

"Given under my hand and seal, this the 20th day of June, 1887.

"W. H. BROWN,    (Seal)."

It appears that Nannie E. Brown, the wife of Jas. R. Brown, at the time that the above agreement was entered into on January 21, 1887, owned in absolute right and as her separate estate an undivided one-thirteenth interest in the lands referred to in the agreement, which she acquired as an heir at law of Joseph C. Brown, which lands were

subsequently partitioned and in which partition there was allotted to Nannie E. Brown 121 acres thereof. Mrs. Brown lived more than seventeen years after the above agreement with W. H. Brown was entered into, and Jas. M. McGuire lived some years after the assignment of the agreement to him, but no sale of the land referred to in the agreement was made, nor was any attempt made to effect a sale thereof during the life of either Mrs. Brown or Jas. M. McGuire, so far as the record discloses.

In 1910 Jas. R. Brown, the husband of Nannie E. Brown, who still survives her, entered into negotiations on behalf of himself and his children with the C. L. Ritter Lumber Company looking to a sale of certain standing timber upon the 121 acres of land in question, and a sale of the timber was agreed on at the price of $1,200; whereupon the heirs and distributees of Jas. M. McGuire, deceased, came forward asserting their right to one-half of the proceeds of said sale of timber by virtue of the agreement between Jas. R. Brown and Nannie E. Brown, and W. H. Brown, and the assignment of the agreement appearing thereon to Jas. M. McGuire, and in order to effectuate the sale of said timber to the C. L. Ritter Lumber Company an agreement in writing was entered into on July 15, 1910, between the heirs and distributees of Jas. M. McGuire, deceased, parties of the first part, the adult heirs and distributees of Nannie E. Brown and Jas. R. Brown, in his own right and as guardian of his infant children, parties of the second part, and the C. L. Ritter Lumber Company, party of the third part, to the effect that the said sale of timber to the lumber company should be consummated by the purchase money being deposited by the lumber company with the clerk of the Circuit Court of Tazewell county to be held in trust until the dispute as to the ownership thereof was settled or adjudicated between the parties of the first part and the parties of the second part to said agreement. Thereupon

this suit was instituted by Jas. R. Brown as guardian of the infant children of himself and Nannie E. Brown, deceased, against the heirs and distributees of Jas. M. McGuire, deceased, the adult children of Nannie E. Brown, deceased, the C. L. Ritter Lumber Company and S. M. Graham, clerk of Tazewell circuit court, in which suit the court was called upon to determine and adjudicate what rights, if any, the heirs, etc., of Jas. M. McGuire, deceased, had in said 121 acres of land or the fund held by Graham, clerk, from the sale of timber from the land by virtue of the agreement of January 21, 1887, between Jas. R. Brown and Nannie E. Brown, and W. H. Brown, and the assignment thereof by the latter to Jas. M. McGuire on June 20, 1887.

Upon the bill of complaint and the exhibited agreement of January 21, 1887, called "Exhibit Brown," and the agreement of July 15, 1910, called "Exhibit Contract," the answer of the guardian *ad litem* and of the heirs of Jas. M. McGuire to the bill, and the depositions of witnesses, the circuit court adjudicated and decreed that the sale of timber to the C. L. Ritter Lumber Company be affirmed, but that "Jas. M. McGuire, the assignee of the contract 'Exhibit Brown,' acquired no interest herein, and acquired no interest in the 121 acres of land, nor in the timber thereon which was sold to the C. L. Ritter Lumber Company, Inc., * * * nor in the fund of $1,200, the purchase price thereof * * *" and that said fund in the hands of Graham, clerk, be distributed to Jas. R. Brown in his own right and as guardian of the infant children of Nannie E. Brown, deceased, and her adult heirs, according to their respective rights therein. From that decree the heirs and distributees of Jas. H. McGuire take this appeal.

The appellants, in brief, contend that the agreement, "Exhibit Brown," "is a definite, unqualified, unconditional promise, under seal, to pay (W. H. Brown) a certain

definite part, to-wit, one-half, of a certain definite fund, to-wit, the purchase money to be received for said land;" that "Exhibit Brown" was a valid and binding contract between the original parties thereto, and that the assignment of this contract to James M. McGuire was also good and valid, and therefore appellants, heirs and distributees of James M. McGuire, are entitled to one-half of the proceeds of the sale of timber from the land in question to the C. L. Ritter Lumber Company.

It is conceded in the argument that if the agreement "Exhibit Brown" amounts only to a power and authority of sale of the land, it is a contract personal and not assignable. The crucial question in the case, therefore, is whether or not the agreement "Exhibit Brown" amounts only to a power and authority to sell the land of Nannie E. Brown referred to in the agreement.

We take it that it will not be controverted that a power and authority to one person to sell the land of another need not be an absolute power to sell in order to make the contract personal and not assignable. It is nowhere in the record claimed that W. H. Brown had any interest whatever in the land in question, and there are no words in the agreement "Exhibit Brown" which can be construed as conveying or intending to convey to him an interest therein.

The contention of appellants that Mrs. Brown intended to give unconditionally to W. H. Brown one-half of her estate in the land in case it was sold, is not borne out by the language of the agreement; nor is the contention that no trust was reposed in him, and he had no authority to act with respect to the sale of the land sustained by the language of the agreement. Unquestionably, it was contemplated that the land should be sold at a price to be fixed, if possible, by the parties, and they were engaged and interested in a common purpose to promote their

mutual interests, Mrs. W. H. Brown desiring to make sale of her land and W. H. Brown intending to aid in accomplishing that result, whereby he was to receive one-half of the proceeds of the sale. An equal right was conferred upon W. H. Brown to dissent from the views of Mrs. Brown and her husband as to the price which should be obtained for the land, for their mutual benefit, which relationship involved and contemplated joint consultation, consideration, exchange of views and opinions, suggestions, discussion and advice presented from either side to promote their mutual interest. Moreover, it was further stipulated that, in case of disagreement as to price, two arbitrators should be selected, one by Mrs. Brown and her husband and the other by W. H. Brown, to fix a price on the land, which when realized was to be equally divided between them. Equal power and authority was conferred upon W. H. Brown to that retained by Mrs. Brown and her husband with respect to fixing the price at which the land should be sold, and with respect to the selection of arbitrators if they failed to agree upon the price; and when the contract is considered along with the surrounding circumstances, it cannot be doubted that Mrs. Brown expected, and was entitled to, W. H. Brown's aid, his advice, his influence and the benefit of his supposed business experience, and that she was prompted to enter into this contract, generous to him, by her confidence in his judgment, ability, opportunity, probably his kinship to her husband, and from her personal acquaintance and association with him, and perhaps other considerations which then appeared sufficient. Nor can it be doubted, upon a consideration of the contract itself, and the circumstances surrounding its execution, that Mrs. Brown was relying and depending largely, if not wholly, upon W. H. Brown to make sale of the land. He had an equal voice in all matters pertaining to a sale of this land with

Mrs. Brown and her husband, and it is inconceivable that it was ever the purpose and intent of the parties that W. H. Brown should have one-half of the proceeds of the land even though he did nothing towards effecting its sale.

"Regard should be had to the intention of the parties and such intention should be given effect. To arrive at this intention, regard is to be had to the situation of the parties, the subject matter of the agreement, the object which the parties intended to accomplish. A construction should be avoided, if it can be done consistently with the tenor of the agreement, which would be unreasonable or unequal, and that construction which is most obviously just is to be favored as most in accordance with the presumed intention of the parties."

In *Schuylkill Nav. Co.* v. *Moore*, 2 Whart. (Penn.), 477, the opinion by Gibson, C. J., says: "The best construction is that which is made by viewing the subject of the contract as the mass of mankind' would view it; for it may be safely assumed that such was the aspect in which the parties themselves viewed it." *Young* v. *Ellis*, 91 Va. 297, 21 S. E. 480; *Laurel Creek Co.* v. *Browning*, 99 Va. 528, 39 S. E. 156.

The agreement "Exhibit Brown" plainly shows, we think, that Mrs. Brown was dealing with W. H. Brown alone as the person whom she selected to aid her in making a sale of her land, a sale to be made within some reasonable time and not long years after; so that if the fact, clearly appearing in the record, that the agreement she signed was abandoned and forgotten by those who were parties to it, as well as by James M. McGuire, W. H. Brown's assignee thereof, be left out of view, the agreement standing alone shows that Mrs. Brown selected W. H. Brown as the person with whom she was willing to deal in the sale of her land, and if bound to W. H. Brown for an interest in the proceeds of a sale of the land it was not

only conditional, but by a contract personal, and therefore not assignable.

Where the personal services of another are expressly contracted for or are necessarily involved in the subject matter of the contract, the contract is not assignable until the services have been performed.   3 Page on Contracts, sec. 1262.

"Contracts involving the relation of personal confidence, and such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided, are not transferable." 4 Cyc. 22; 2 Am. & Eng. Ency. L. (2nd ed.) 1018.

"Every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent.   In the familiar phrase of Lord Denman, 'you have a right to the benefit you anticipate from the character, credit and substance of the party with whom you contract.' * * * Rights arising out of contract cannot be transferred if they are coupled with liabilities, or they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided." *Ark. Val. Smelting Co.* v. *Belden N. Co.,* 127 U. S. 248, 32 L. ed. 246, 8 Sup. Ct. 1308; Pollock on Contracts (4th ed.) 425.

In *Epperson* v. *Epperson,* 108 Va. 476, 62 S. E. 346, the opinion says: "It is also an elementary principle that an executory contract for personal service, founded on personal trust and confidence, is not assignable."

Section 235, Reinhard on Agency, says: "The next rule is that which requires the agent to execute his authority in person.   As stated and fully explained elsewhere in this work, authority that has been delegated cannot, as a general rule, be redelegated.   The agent has been selected, perhaps, on account of the special confidence or trust of

the principal in the agent, or of his peculiar skill or competence to perform the act in question. But whether this be so or not as an actual fact, such is the presumption." See also section 187 of same work; Huffcut on Agency (2nd ed.) 118; *Boston I. Co.* v. *Potter,* 123 Mass. 28, 25 Am. Rep. 9.

It does not appear that Mrs. Brown ever heard of the assignment of the agreement "Exhibit Brown" by W. H. Brown to Jas. M. McGuire, but be that as it may, under the rules of construction to which we have adverted, the agreement established personal relations of trust and confidence between the parties thereto as to the disposition of Mrs. Brown's land, and, therefore, W. H. Brown was without power or authority to assign the agreement to any one, and this being the situation when he attempted to assign it to McGuire, the latter took no interest whatever in Mrs. Brown's land or any timber thereon which he could have asserted against her in her lifetime or against her estate after her death, or which could pass to his heirs or distributees.

Having taken this view of the case, it becomes unnecessary to consider other questions raised and discussed in the argument.

We are of opinion that the decree of the circuit court complained of is right, and it is, therefore, affirmed.

*Affirmed.*