## Smith, Bell & Hauck, Inc. v. Philip G. Cullins et al

[183 A.2d 528]

May Term, 1962

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed June 22, 1962

*Edmunds, Austin & Wick* for the plaintiff.

*Joseph C. McNeil* and *Francis D. Foley* for the defendants.

**Holden, J.** The plaintiff corporation purchased an insurance agency which was owned and operated by the defendant Cullins' former employer. By this action in equity it seeks to enforce the employee's covenant that he would not engage in the insurance business in the county of Chittenden for a period of three years after the termination of his employment. Equitable relief was denied and the plaintiff appeals.

The essential facts determined by the chancellor are not in serious dispute. During the latter part of 1949, the defendant Philip G. Cullins became employed by the corporate insurance firm of Smith, Bell & Company, Inc. with its offices in the city of Burlington. A few months later, on January 18, 1950, these parties signed a formal contract of employment. The writing recites that the character of the employee's services are such that he will acquire a close relationship with the employer's customers. It is stated that if the contacts and information thus acquired are used in competition with the employer, irreparable injury will result. The agreement then provides:

"3. That *Employee* will not engage in the insurance business or real estate brokerage business so as to compete with *Employer,* either directly or indirectly, either as owner or as employee, or in any manner be connected with such a business in the County of Chittenden and State of Vermont for a period of three years (3) from the termination of his employment by *Employer* and this undertaking shall be valid and binding upon *Employee* notwithstanding the fact that the employment provided by this agreement may be terminated within a very short time after the execution of

this instrument and regardless of the reason for the termination of such employment.

"4. It is thoroughly understood and agreed by and between the parties hereto that this employment may be terminated at any time by either party and *Employer* does not guarantee the *Employee* a permanent position or a position for any specific period of time. Should the employment herein provided be terminated by either party for any reason whatsoever *Employee* agrees on his part that for the period set forth in the preceding paragraph and within the area set forth in said paragraph that he will not engage, either directly or indirectly, in the insurance or real estate brokerage business, all as provided for in the preceding paragraph of this agreement.

"5. It is specifically understood and agreed by and between the parties hereto that said agreement not to compete as above provided in the two preceding provisions of this agreement is an important consideration for the employment of *Employee* by *Employer*."

The language of the contract makes no provision concerning assignment. No reference is made to successors or assigns of either party.

The defendant Cullins rose to a position of prominence in the affairs of Smith, Bell & Company, Inc. He became well and favorably known througout the Burlington community as an experienced insurance broker. His services with this agency were profitable both to his employer and to himself. Cullins was satisfied in his employment by Smith, Bell & Company and would have continued with this corporation had he been permitted to do so. His employment by the firm was concluded on August 17, 1961.

During the time of his service with this agency its capital stock was closely held by Ernest B. Smith, who owned fifty-one per cent and Phillips M. Bell, the beneficial owner of the remainder. On July 21, 1961 these stockholders granted a written option to George K. Hauck, or his nominee, which provided for the purchase of all of the outstanding shares of stock in Smith, Bell & Company, Inc.

The option agreement provided, among other things, that in the event of purchase, the sellers would deliver written resignations of all officers in the Smith, Bell & Company, Inc. The agreement also acknowledges that the parties have examined the employment contract

between the corporation and Philip Cullins, that the enforceability of the contract is understood by the parties and the sellers shall not be deemed to have assumed any personal liability as to its validity.

The option to purchase was exercised according to a formal and detailed plan. The execution of the arrangements specified accomplished these results. All of the capital stock and assets of Smith, Bell & Company, Inc. were transferred to the George K. Hauck Agency, Inc., including the Cullins contract. The stock certificates in the transferring corporation were cancelled. On August 17, 1961, Smith and Bell, as officers of the old agency, filed a certificate of dissolution of Smith, Bell & Company, Inc. as provided in 11 V.S.A. §531. The articles of association of the purchasing corporation were amended to change its name from George K. Hauck Agency, Inc. to Smith, Bell and Hauck, Inc., the plaintiff in this action.

At or about the time of the transfer, George K. Hauck, the owner and president of the plaintiff, advised the defendant Cullins that he would like him to remain with the "new corporation" in the capacity of vice-president and director at the same income he received from the Smith, Bell & Company, Inc. Cullins declined and never entered the employ of the plaintiff.

During the ensuing month Cullins organized The Philip G. Cullins Insurance Agency, Inc. The chancellor has found that Cullins intends to use the knowledge, experience and customer contacts which he acquired during his service with Smith, Bell & Company, Inc. to further the business interests of his newly formed agency.

The essential and controlling question is the right of the plaintiff, as the successor to Smith, Bell & Company, Inc., to enforce the restrictive agreement provided in Cullins' contract of employment with his former employer. In dealing with the problem it is not important whether Cullins knew of the proposed assignment of his undertaking to the purchaser of his former agency. The plaintiff's criticism of a negative finding on this point is of no consequence in view of the undisputed fact that the employee did not authorize the assignment. The plaintiff's claim to equitable relief must stand or fall on its right to be substituted as covenantee over the opposition of the employee who made the undertaking with the plaintiff's predecessor. If the employee's agreement not to compete is assignable, equitable relief should not be withheld. On the other hand, if the covenant is personal, in-

capable of extension beyond the original parties, the plaintiff has no standing to enforce its restraint.

Our statutes recognize and authorize the transfer of corporate assets by sale, merger and consolidation between different corporate entities. And it is provided that the acquiring corporation shall possess all the rights, privileges and benefits of the original corporation properly exercisable under the laws of this state. 11 V.S.A. §§161, 165.

■ The statute, alone, does not answer the question posed in this case. If the agreement not to compete is personal as between its original parties, the attempted transfer of the covenant would not confer a right which is "properly exercisable" under the laws of this jurisdiction. Moreover, if the obligation of the restriction is personal in character it would not survive the consolidation of assets and subsequent dissolution of the corporation to which it was given. *American Colortype Co.* v. *Continental Colortype Co.,* 188 U. S. 104, 23 S.Ct 265, 47 L.Ed 404, 405. See, 6 Williston, Contracts, §1960 p. 5500 (Rev. Ed.).

■ "A covenantor is not to be held beyond his undertaking, and he may make that as narrow as he likes." Holmes, J. in *Portuguese-American Bank of San Francisco* v. *Welles,* 242 U.S. 7, 37 S.Ct. 3, 61 L.Ed. 116, 118. An equivalent corollary to this first principle is the right of an obligor to rely on the character, substance and integrity of the person with whom the obligation is undertaken. *Arkansas Valley Smelting Co.* v. *Belden Mining Co.,* 127 U.S. 379, 8 S.Ct. 1308, 32 L.Ed. 246, 248.

■ It is from these basic considerations that the assignability of the employee's covenant must be tested. In the last analysis, the controlling factor is the intention of the parties to the original undertaking. And this must be gathered from a consideration of all its terms and the tenor of the entire contract. *Arkansas Valley Smelting Co.* v. *Belden Mining Co., supra,* 32 L.Ed. at 248; *Paige* v. *Faure,* 229 N.Y. 114, 127 N.E. 898, 10 A.L.R. 649, 652; 2 Williston, Contracts §423 (Rev. Ed.); 4 Am. Jur. Assignments, §6, p. 235; 6 C.J.S. Assignments §24a, p. 1071.

■ The restriction against an employee's subsequent competition is ancillary to the main contract of hiring. 5 Williston, Contracts,

§1643 (Rev. Ed.). Courts of equity should always proceed with caution in enforcing covenants of this nature and they will be given effect only to the extent necessary for the employer's protection. *Dyar Sales & Machinery Co.* v. *Bleiler,* 106 Vt. 425, 432, 434, 175 Atl. 27.

Of course, the principal agreement by which Cullins' services were retained is inherently personal to the parties. Performance is not expected by anyone save the parties themselves. The problem then is whether the parties intended that the covenant which secured the employment can be uncoupled from the parent undertaking to be made an instrument of trade, available for sale to an outside competitor.

By its terms the covenant runs to the employer alone. The absence of words of assignability, such as successors or assigns, is not of itself controlling, but it is some evidence that the intention of the parties was against assignment. *Hillman* v. *Shanahan,* 4 Or. 163, 168; 4 Am. Jur. Assignments, §7, p. 235.

From its inception, the relationship between Smith, Bell & Company, Inc. and its employee Cullins was one of mutual confidence. The employer confided to the servant important customer relationships and business confidences. The employee entrusted to his employer the important privilege of discharging him at will and without cause. This eventuality would at once invoke the severe detriment of foreclosing him from employment elsewhere in that community in his chosen occupation. The restriction, in its own terms, was designed to protect a fiduciary relationship which emanated solely from the master and servant relationship.

Knowing the character and personality of his master, the employee might be ready and willing to safeguard the trust which his employer had reposed in him by granting a restrictive covenant against leaving that employment. His confidence in his employer might be such that he could scarcely anticipate any rupture between them. As to that particular employer, if a break did occur, he might be willing to pledge that his fidelity would continue after the employment had ended, even at the cost of forsaking the vocation for which he was best suited. This does not mean that he was willing to suffer this restraint for the benefit of a stranger to the original undertaking.

We conclude that the personal characteristics of the employment contract permeate the entire transaction. Like the contract for hiring, upon which it was given, the employee's restrictive covenant is con-

fined to the employer with whom the undertaking was made. Since the beneficial interest in Cullins' agreement not to engage in the insurance business was personal to Smith, Bell & Company, Inc., it was incapable of effective assignment without the employee's consent or ratification. Thus the right to enforce it expired when the corporation was dissolved.

In reaching this result we recognize that there is opposing authority elsewhere that proceeds on the theory that an employee's covenant not to compete attaches to the good will of the employer's business. As such it has been held to be marketable along with the other assets of the employer's business. See *Torrington Creamery, Inc.* v. *Davenport,* 126 Conn. 515, 12 A.2d. 780, 783 ; 5 Williston, Contracts, §1643 (Rev. Ed.) ; 40 B. U. L. Rev. 224 (1960) ; 19 U. Chi. L. Rev. 97 (1951).

On the facts presented here, there is nothing to establish that such an eventuality was contemplated or considered by the parties at the time of their agreement. In the absence of such a consideration and without express authority to assign, we find no justification to extend the coverage of the covenant to an outsider whose protection was neither sought nor anticipated at the time the engagement was made. See *West* v. *Jacobs,* 277 Mass. 406, 178 N.E. 615, 617 ; *Berlitz School of Languages, Ltd.* v. *Duchene,* 6 Court of Sessions (Scot.) 181, 185.

*The order of the chancellor dismissing the complaint is affirmed.*