The **REYNOLDS AND REYNOLDS COMPANY, Plaintiff,**

v.

Thomas P. **HARDEE, Defendant.**

**Action No. 2:96cv327.**

United States District Court,
E.D. Virginia,
Norfolk Division.

July 11, 1996.

Dean T. Buckius, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for Defendant.

### OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court upon defendant's motion to dismiss or, in the alternative, for summary judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On March 9, 1988, defendant Thomas P. Hardee entered into an employment contract with Jordan Graphics, Inc. ("Jordan") as a sales representative for the territory in a sixty-mile radius of Virginia Beach. Jordan was in the business of manufacturing, buying, selling, trading, and dealing in business forms, such as stationary. Prior to January, 1996, Jordan had a substantial customer base throughout the mid-Atlantic region.

In Paragraph 2, the Employment Agreement between Mr. Hardee and Jordan contained a covenant not to compete:

Sales Representative agrees that during the period of one (1) year next following the date of the termination for any reason of his employment with [Jordan], he will not ... engage in or become financially interested in the business of manufacturing, buying, selling, trading and dealing in business forms, including printed matter, stationery, manifolding forms, books of account and pressure sensitive labels in the Territory; and it is hereby provided that if Sales Representative shall violate or attempt to violate any provision of this paragraph, he may be enjoined in an action to be brought in any court of competent jurisdiction and such action shall not be subject to the defense that there exists an adequate remedy at law.

In Paragraph 3 of the Employment Agreement, Mr. Hardee agreed

that all sales files, customer records, and reports used, prepared or collected by him are the property of [Jordan] and agrees that in the event of the termination of his employment with [Jordan] for any reason, he will return and make available to [Jordan] prior to the last day of his employment all sales files, customer records reports in his possession.

Plaintiff, The Reynolds and Reynolds Company ("Reynolds"), also deals in business forms. On January 23, 1996, Reynolds purchased a substantial portion of Jordan's assets and goodwill, including various contracts and agreements that Jordan had with third parties. Included in the sale was the Employment Agreement between Jordan and Mr. Hardee. However, on the same day as the sale to Reynolds, Jordan terminated Mr. Hardee's employment. Reynolds then offered Mr. Hardee a new contract of employment. The Reynolds contract contained a more restrictive covenant not to compete: it extended the territory covered by the covenant to a radius of 100 miles around Virginia Beach and it lasted for two years with respect to Reynolds' customers. Mr. Hardee rejected the contract, but stated that he would work for Reynolds under the same terms as his Employment Agreement with Jordan. Reynolds did not agree to those terms, but informed Mr. Hardee that it intended to enforce the covenant not to compete in Mr. Hardee's Employment Agreement with Jordan.

On March 29, 1996, Reynolds filed suit in this court against Mr. Hardee for breach of contract and misappropriation of trade secrets. Jurisdiction is based on diversity of citizenship. The complaint alleges that in late January, 1996, Mr. Hardee began to sell and deal in business forms in the Virginia Beach area in violation of his covenant not to

compete. As a result of Mr. Hardee's competition, several customers of Reynolds switched to Mr. Hardee. The complaint also alleges that Mr. Hardee took various pieces of Jordan's customers' artwork with him and used it to solicit the sale of business forms to former Jordan clients.

In Count 1, Reynolds alleges that Mr. Hardee breached his employment contract by competing within the defined territory and by taking customers' artwork. In Count 2, Reynolds asserts a cause of action against Mr. Hardee for misappropriation of trade secrets, in violation of Va.Code Ann. § 59.1–336. Reynolds seeks an injunction to prevent Mr. Hardee from engaging in the business of buying, selling, trading, or dealing in business forms within a sixty-mile radius of Virginia Beach and an injunction preventing Mr. Hardee from using any trade secrets which he took from Jordan, including the artwork of Jordan's customers. In addition, Reynolds asks for a sum in excess of $50,000 for compensatory damages, plus costs.

Mr. Hardee responded to Reynolds' complaint on April 22, 1996, with a motion to dismiss or, in the alternative, for summary judgment. That same day, Mr. Hardee filed a memorandum of law and his own affidavit in support of his motion. In addition to his own affidavit, Mr. Hardee relies upon the affidavits of Thomas Morrow, Reynolds' regional sales manager, and Adam M. Lutynski, Reynolds' general counsel and secretary, both of which were offered into the record by Reynolds in support of its motion to expedite discovery and its motion for a preliminary injunction.[1]

Mr. Hardee asserts five grounds for dismissal or summary judgment: (1) Reynolds is not the assignee of the Employment Agreement between Mr. Hardee and Jordan and, therefore, has no standing to sue under the agreement; (2) the agreement is unenforceable under the equitable principal of "unclean hands" and under the Thirteenth Amendment to the United States Constitution; (3) Reynolds failed to allege facts in the complaint sufficient to state a cause of action

for misappropriation of trade secrets; (4) the artwork at issue in the misappropriation count is a part of a process and, therefore, is not a trade secret; and (5) Reynolds can produce no evidence to prove that Mr. Hardee actually took the artwork.

Reynolds filed a memorandum of law in opposition to Mr. Hardee's motion on May 14, 1996. Reynolds also submitted an additional affidavit from Thomas Morrow, regional sales manager at Reynolds. Mr. Hardee submitted a reply memorandum on May 20, 1996. On June 25, 1996, the court heard oral arguments on defendant's motion. The motion is now ready for disposition.

## II. ANALYSIS

### A. Standard of Review

■ When deciding whether to grant a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, the factual allegations in the plaintiff's complaint must be accepted as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). A Rule 12(b)(6) motion should only be granted "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). When deciding a Rule 12(b)(6) motion, a court should only consider the pleadings, disregarding affidavits or other materials. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). However, if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.Pro. 12(b).

■ Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When deciding whether to grant a motion for sum-

---

1. On the same day Reynolds filed its complaint, March 29, 1996, it also filed a motion for a preliminary injunction and a motion to expedite discovery. Both sides submitted memoranda of law on these two motions. However, these motions are not before the court at this time.

mary judgment, a court must view the entire record in the light most favorable to the non-moving party. *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,* 763 F.2d 604, 610 (4th Cir.1985). Either party may submit verified evidence in support of its position. This evidence must be based on personal knowledge and must set forth admissible facts. Fed.R.Civ.P. 56(c). However, the moving party need not supply any evidence negating its opponent's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

 The party who bears the burden of proving a particular element of a claim must "designate 'specific facts showing there is a genuine issue for trial' " with respect to that element. *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). Rule 56 mandates summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552.

*B. Defendant's Motion*

Defendant moves the court to dismiss both counts in the complaint or, in the alternative, to enter summary judgment in his favor. For the reasons set forth below, the court GRANTS defendant's motion to dismiss the breach of contract count and GRANTS defendant's motion for summary judgment with respect to the misappropriation of trade secret's count.

*1. breach of contract*

Defendant argues that the breach of contract count must be dismissed for three reasons: (1) plaintiff is not an assignee of the contract between defendant and Jordan and, therefore, has no standing to enforce the contract; (2) defendant is entitled to the equitable defense of "unclean hands" due to plaintiff's inequitable conduct regarding de-

fendant's employment; and (3) enforcement of the covenant not to compete would violate the Thirteenth Amendment of the United States Constitution. Plaintiff argues in response that, while it does not have the right to force defendant to work for it pursuant to the new employment contract, it does have the right to enforce the covenant not to compete in the previous Employment Agreement with Jordan. Plaintiff also insists that it did not act unfairly in its dealings with defendant and that the Thirteenth Amendment is not at issue in this case.

The question of plaintiff's standing is whether covenants not to compete contained in employment contracts are assignable. Because the court finds that the non-compete clause at issue in this case is not assignable under Virginia law, consideration of defendant's other arguments is unnecessary.

 Under Virginia law, contracts for personal services are not assignable, unless both parties agree to the assignment. *McGuire v. Brown,* 114 Va. 235, 239–42, 76 S.E. 295, 297 (1912); *Epperson v. Epperson,* 108 Va. 471, 475–77, 62 S.E. 344, 346 (1908) (stating that "an executory contract for personal service, founded on personal trust or confidence, is not assignable"). Defendant's Employment Agreement with Jordan is clearly a contract for personal services, based on trust and confidence. Defendant's position involved direct sales to clients; he acted as Jordan's agent in its dealings with customers. A person in such a position must necessarily obtain the trust and confidence of his or her employer. Defendant also placed considerable trust in Jordan by even agreeing to the non-compete clause, namely trusting that Jordan would not fire him and then invoke the covenant not to compete. Because the Employment Agreement was based on mutual trust and confidence, it is not assignable under Virginia law.[2] *E.g., McGuire,* 114 Va. at 239–42, 76 S.E. at 297.

**2.** Plaintiff argued at the hearing on defendant's motion that the Employment Agreement is not a personal services contract because the services provided by defendant could have been provided by anyone else. Plaintiff's argument on this point is disingenuous. The personal nature of defendant's services is evident from the fact that

Jordan included a covenant not to compete in defendant's contract. Likewise, the contract which plaintiff offered to defendant contained a non-compete clause. If defendant's services could have been provided equally well by anyone else, it would be unnecessary to restrict defendant's employment activities following termi-

No Virginia court, however, has expressly addressed whether a covenant not to compete contained *in an employment contract* may be assignable apart from the whole contract, despite the personal nature of the whole agreement and the non-assignability of the agreement as a whole. *But see Burchell v. Capitol City Dairy, Inc.*, 158 Va. 6, 10, 163 S.E. 81, 82 (1932) (holding that non-compete clauses *in contracts for the sale of businesses are assignable along with the entire sales contract* of which they are a part and that these clauses may be enforced only by the assignee of the sales contract). The court, therefore, looks to other jurisdictions for guidance.

Several courts have held that employment contracts in their entirety, including covenants not to compete, are non-assignable. *See Sisco v. Empiregas, Inc. of Belle Mina*, 286 Ala. 72, 75, 237 So.2d 463, 466–67 (1970); *Schweiger v. Hoch*, 223 So.2d 557, 558 (Fla. App.1969); *Orkin Exterminating Co., Inc. v. Burnett*, 259 Iowa 1218, 1228, 146 N.W.2d 320, 327 (1966); *Smith, Bell & Hauck, Inc. v. Cullins*, 123 Vt. 96, 101, 183 A.2d 528, 532 (1962).

The court in *Smith, Bell & Hauck, Inc.* best stated the reasoning for this position, emphasizing that employment contracts are personal in nature, based on mutual confidence. The court stated its reasoning this way:

> From its inception, the relationship between Smith, Bell Company, Inc., and its employee Cullins was one of mutual confidence. The employer confided to the servant important customer relationships and business confidences. The employee entrusted to his employer the important privilege of discharging him at will and without cause. This eventuality would at once invoke the severe detriment of foreclosing him from employment elsewhere in that community in his chosen occupation. The restriction, in its own terms, was designed to protect a fiduciary relationship which emanated solely from the master and servant relationship.
>
> Knowing the character and personality of his master, the employee might be ready and willing to safeguard the trust which his employer had reposed in him by granting a restrictive covenant against leaving that employment. His confidence in his employer might be such that he could scarcely anticipate any rupture between them. As to that particular employer, if a break did occur, he might be willing to pledge that his fidelity would continue after the employment had ended, even at the cost of forsaking the vocation for which he was best suited. This does not mean that he was willing to suffer this restraint for the benefit of a stranger to the original undertaking.

*Smith, Bell & Hauck, Inc.*, 123 Vt. at 100–01, 183 A.2d at 532.[3]

Several other courts have held that covenants not to compete in employment contracts are assignable despite being part of a personal services contract. *See Equifax Serv., Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir.1990) (applying Kansas law); *In re Hearing Centers of America, Inc.*, 106 B.R. 719, 721–22 (Bankr.M.D.Fla.1989) (applying Florida law); *Norman Ellis Corp. v. Lippus*, 13 Misc.2d 432, 176 N.Y.S.2d 5, 6 (1955); *A. Fink & Sons, Inc. v. Goldberg*, 101 N.J.Eq. 644, 648, 139 A. 408, 410 (1927).

These cases reason that an employment contract contains a bundle of rights. While an assignee is unable to force the employee to work for it under the employment contract, it has the power to enforce a covenant not to compete contained in the contract.

---

nation. Clearly, defendant offered something to the company—personal contacts and/or charisma—which was not readily available in the work force. In fact, plaintiff admits that defendant was a good salesman and that he took business with him when he left.

**3.** Plaintiff attempts to distinguish *Smith, Bell & Hauck, Inc.* from the present case by noting that the employee in *Smith, Bell & Hauck, Inc.* promised to *not compete against the employer*, while defendant in this case promised to *not engage in the same business as the employer*. This is a distinction without a difference. The covenant involved in this case was clearly intended to prevent defendant from competing against Jordan following his termination. It had the same practical effect as the covenant in *Smith, Bell & Hauck, Inc.*, and there is no reason to treat the two cases differently.

The court in *A. Fink & Sons, Inc.* stated this position in its ruling against the defendant/employee:

> Counsel for defendant assumes that the question here involved is the assignability of a contract for personal service. It is not. The complainant is not seeking to compel the defendant to work for it. Quite the contrary. It seeks only the benefit of the restrictive covenant contained in the contract of employment.

101 N.J.Eq. at 648, 139 A. at 410.

This court finds the reasoning in the *Smith, Bell & Hauck, Inc.* line of cases most persuasive. Without question, an employment contract of the sort involved in this case is not assignable under Virginia law. *See, e.g., McGuire,* 114 Va. at 239–42, 76 S.E. at 297. Dividing defendant's contract and allowing portions of it to be assigned, while disallowing assignment of the whole is inconsistent with this Virginia precedent. This court, therefore, holds that the covenant not to compete contained in Mr. Hardee's employment contract is not assignable. Accordingly, this court **FINDS** that plaintiff is not an assignee of the contract between defendant and Jordan and, consequently, has no standing to sue on that contract. Defendants motion to dismiss Count 1 is **GRANTED.**[4]

### 2. misappropriation of trade secrets

█ Defendant raises three arguments in opposition to the misappropriation of trade secrets: (1) Count 2 fails to state a claim for relief under the misappropriation of trade secrets statute because it does not allege that plaintiff or Jordan took steps to ensure the secrecy of the artwork at issue or that defendant knew or should have known that the artwork was a trade secret; (2) the competent evidence in the record establishes that the artwork at issue is not a trade secret within the meaning of the Uniform Trade Secrets Act; and (3) plaintiff has not come forward with evidence proving that defendant misappropriated the artwork. The

court agrees with defendant's third argument and **FINDS** that plaintiff has not met its burden of submitting sworn evidence which establishes that defendant misappropriated the artwork. There is no need, therefore, to address defendant's first two arguments.

In Count 2, plaintiff alleges: (1) the artwork for customers of Jordan constitutes "trade secrets" within the meaning of Va. Code Ann. 59.1–336; (2) defendant misappropriated the artwork in violation of the Uniform Trade Secrets Act; and (3) plaintiff has been damaged by the misappropriation. Complaint ¶¶ 28–30.

The Virginia Uniform Trade Secrets Act ("UTSA") provides a remedy of injunctive relief and damages against a person who misappropriates a trade secret. Va.Code Ann. §§ 59.1–337, 59.1–338. A trade secret is:

> [I]nformation, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> 2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* at § 59.1–336; *see also Dionne v. Southeast Foam Converting & Packaging Inc.,* 240 Va. 297, 397 S.E.2d 110, 113 (1990) (addressing the definition of trade secret). "Misappropriation" of a trade secret is defined as:

> 1. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> 2. Disclosure or use of a trade secret of another without express or implied consent by a person who
>
> a. Used improper means to acquire

---

**4.** Although the court does not reach defendant's equitable argument of "unclean hands," it appears persuasive given the fact that Jordan terminated Mr. Hardee on the same day as the sale to Reynolds, and then Reynolds tried to rehire him under a more onerous non-compete clause, which he refused to accept. When Reynolds could not rehire Mr. Hardee under more restrictive conditions, it just turned around and attempted to enforce the previous, less restrictive non-compete covenant in the terminated Jordan employment contract. *See supra* at 151.

knowledge of the trade secret; or

b. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was

(1) derived from or through a person who had utilized improper means to acquire it;

(2) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;

(3) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(4) Acquired by accident or mistake.

Va.Code Ann. § 59.1–336.

Defendant contends that plaintiff is unable to come forward with facts to show that defendant actually took the artwork, as alleged in the complaint. In his affidavit, defendant denies the allegations in Count 2: "I did not take any of Jordan's artwork with me following my employment. In each occasion in which I obtained work, including from WVEC–TV 13, I or a printer created the new artwork." Def. Aff. ¶ 15.

Plaintiff has offered into the record two affidavits from Thomas Morrow, Reynolds' regional sales manager, and one affidavit from Adam M. Lutynski. Neither Mr. Morrow nor Mr. Lutynski states that defendant took artwork belonging to Jordan or plaintiff. The closest evidence to that effect comes from Mr. Morrow in his first affidavit:

In mid-February of 1996, WVEC–TV 13 called my office inquiring about an order that it had placed with Hardee, but was not processed by Jordan or Reynolds. The customer was looking for the artwork for the order which was the property of Jordan prior to Hardee's separation. The customer further stated that she would contact Hardee directly to obtain the new artwork.

Morrow Aff. 1 ¶ 7. Even if the statement of the WVEC–TV 13 representative were admissible hearsay, it does not establish that defendant took artwork belonging to Jordan or plaintiff, only that the customer would contact defendant regarding the "new artwork." This evidence is insufficient to raise a material issue of fact.

In his second affidavit, Mr. Morrow states that files of customers which defendant had serviced while he was at Jordan were missing following defendant's departure. Morrow Aff. 2 ¶ 5. Mr. Morrow does not state that artwork was contained in those files or that he has any proof that defendant took the files. Like Mr. Morrow's first statement, this statement does not raise a material issue of fact with regard to Count 2.

The only evidence in the record directly on point is defendant's sworn statement that he did not take any customer's artwork. His statement is uncontradicted by plaintiff's evidence. Plaintiff, therefore, has failed to carry its burden under Rule 56 of designating specific facts which show a genuine issue for trial with respect to the misappropriation element. *See Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. Accordingly, the court **GRANTS** defendant's motion for summary judgment as to the misappropriation of trade secrets count.

### III. CONCLUSION

For the foregoing reasons, the court **GRANTS** defendant's motion to dismiss Count 1 of the complaint and **GRANTS** defendant's motion for summary judgment as to Count 2 of the complaint.

The Clerk is DIRECTED to send a copy of this Opinion and Final Order to all counsel of record.

It is so ORDERED.