## CIRCUIT COURT OF CHESTERFIELD COUNTY

SmartMail Services, L.L.C.

v.

Chris Ellis

December 5, 2003

Case No. CH03-1358

BY JUDGE F. G. ROCKWELL, III

The parties were before the Court on November 17, 2003, for a hearing on SmartMail Services' motion for a preliminary injunction to enjoin Chris Ellis, the defendant, from continuing his employment with UPS Mail Innovations (UPS-MI). After hearing the arguments of counsel, the Court took the matter under advisement to review the parties' memoranda and the pertinent authorities.

*Background*

This matter arises out of the alleged breach of a non-compete clause in an employment contract entered into by the defendant, Chris Ellis, and his former employer, Drop Ship Express, Inc. (Drop Ship), which was subsequently purchased by SmartMail Services, L.L.C. (SmartMail).

Drop Ship hired Ellis as a Regional Account Manager, covering Virginia and North Carolina, in January 1999. SmartMail, a Delaware corporation with its headquarters in Georgia, acquired the business and assets of Drop Ship, a Minnesota corporation headquartered in Minnesota, in June 2003. Ellis tendered his resignation to SmartMail in August 2003 after declining to sign a new employment contract. Ellis continued his employment with SmartMail for

several weeks after he tendered his resignation and before he began his new employment with UPS-MI.

SmartMail contends that an assignment provision in the Ellis-Drop Ship agreement allows it to enforce the covenant not to compete and the non-disclosure provision against Ellis. SmartMail also contends that the choice of law provision in the employment agreement governs this matter and that Minnesota law should be applied to determine the outcome of this case.

SmartMail's allegation that Ellis has and is violating his non-compete provision is based primarily on the fact that two of Ellis's SmartMail clients have left SmartMail to do business with UPS-MI. Specifically, SmartMail alleges that Ellis has solicited the business of WI Link and Health Management Corporation (HMC), two of SmartMail's largest accounts and former clients of Ellis while he was with Drop Ship. SmartMail also alleges that Ellis's position with UPS-MI puts him in a position to use SmartMail's confidential and proprietary information for UPS-MI's advantage.

Each party has submitted affidavits replete with hearsay to support its position. SmartMail submitted the affidavits of Don Berry, Executive Vice President of Sales and Marketing at SmartMail; Blair Mastal, Vice President of Sales, Northeast Region at SmartMail; and Dan Meyerpeter, General Manager of SmartMail's Baltimore "Smart Center" facility. These affidavits contend that UPS-MI is in fact a competitor of SmartMail; that Ellis's employment at UPS-MI is in violation of his employment contract; and that Ellis solicited business, namely WI Link and HMC, away from SmartMail to UPS-MI in breach of his employment contract.

Ellis denies SmartMail's allegations and submitted his own affidavit as well as the affidavits of Russell Cederholm, Director of Operations for WI Link, and Lavonne Tuck, Mail Center Manager for Anthem BC/BS, which is part of Health Management Corporation. Ellis asserts, and Cederholm and Tuck corroborate, that his contact with those two individuals has not been related to either SmartMail or UPS-MI. Cederholm asserts that he and Ellis are close personal friends. Tuck asserts that she and Ellis met to discuss business related to their sitting on the board of the Postal Customer Council; she also indicated that she does not have the authority to change postal providers. Both Cederholm and Tuck indicated that their respective companies changed providers because of a noticeable drop in quality of service.

*Findings*

"No temporary injunction shall be awarded unless the court shall be satisfied of the plaintiff's equity." Code of Virginia § 8.01-628 (2003).

The law is well settled that, where there is a conflict of laws, the law of the forum state will govern procedural matters. An action brought in Virginia must be litigated under the procedural rules of Virginia, including Virginia's choice of law principles. See *Zukowski v. Dunton*, 650 F.2d 30 (4th Cir. 1981). Therefore, the procedural determination of whether or not to grant a temporary injunction will be governed by Virginia law. While the Supreme Court of Virginia has not specifically set forth a test to be used for issuing temporary injunctions, numerous courts have adopted the test set forth by the Fourth Circuit Court of Appeals:

> 1. The likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;
> 2. The likelihood of harm to the defendant if the requested relief is granted;
> 3. The likelihood that the plaintiff will succeed on the merits; and
> 4. The public interest.

*Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991).

A. *Likelihood of Irreparable Harm to the Plaintiff*

The Court must first address the likelihood that the plaintiff will suffer irreparable harm if the injunction is not granted. SmartMail alleges that Ellis's employment is in contravention with his non-compete and non-disclosure agreement. According to SmartMail, UPS-MI is a direct competitor in the same industry as SmartMail. SmartMail also alleges that Ellis has actively sought to lure SmartMail clients to UPS-MI and that Ellis's position with UPS-MI is in a capacity where the proprietary and confidential knowledge gained from his employment at Drop Ship would give UPS-MI a competitive advantage over SmartMail.

On the other hand, Ellis asserts that his position with UPS-MI is in a capacity that is very different from his position at Drop Ship or SmartMail and that he has not and would not disclose privileged information. Ellis further asserts that his contact with employees of WI Link and HMC were unrelated to either UPS-MI or SmartMail business.

The Court has no evidence before it, other than hearsay allegations, that Ellis is harming SmartMail in any way. The affidavits of Ms. Tuck and Mr. Cederholm indicate that they stopped doing business with SmartMail because of a decrease in quality of service. Since there is no direct evidence of a link

establishing that Ellis actively lured SmartMail clients away from the company or that Ellis is divulging privileged information, granting a temporary injunction enjoining Ellis from working for UPS-MI would not necessarily prevent harm to SmartMail.

B. *Harm to the Defendant if the Injunction is Granted*

SmartMail asserts that Ellis could still work for a competitor of SmartMail but that he should be enjoined from working in any capacity where he would have contact or potential contact with previous SmartMail accounts and clients. Ellis argues that enjoining from working in his current position would effectively put him in the unemployment line.

The Court finds that granting a temporary injunction before there is more evidence before the Court as to Ellis's alleged malfeasance would significantly harm the defendant.

C. *Likelihood of Success on the Merits*

The threshold issue for SmartMail is whether or not the employment contract entered into between Ellis and Drop Ship is assignable. If the contract is not assignable, then a breach of contract claim will not stand. The contract between Ellis and Drop Ship has the following relevant provisions:

> 17. *Successors*. This Agreement will be binding on the heirs, assigns, and legal representatives of Employee, and it may be transferred by Employer to its successors and assigns. . . .
> 19. *Applicable Law*. This Agreement and all rights and obligations hereunder shall be governed by and construed in accordance with the laws of the State of Minnesota.

Parties have a right to enter into choice of law provisions and those provisions should be upheld as long as there is a reasonable basis for choosing the law of that forum. The Supreme Court of Virginia has stated:

> Where parties to a contract have expressly declared that the agreement shall be construed as made with reference to the law of a particular jurisdiction, we will recognize such agreement and enforce it, applying the law of the stipulated jurisdiction.

*Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 342 (1990) (citing *Union Central Life Ins. Co. v. Pollard*, 94 Va. 146, 151-52 (1896)).

The Court must now look at the substantive law of Minnesota to determine whether or not the plaintiff is likely to prevail. The Minnesota Court of Appeals stated that "a covenant not to compete in an employment agreement is assignable ancillary to the sale of a business to protect the goodwill of that business." *Saliterman v. Finney*, 361 N.W.2d 175, 178 (Minn. App. 1985).

However, Virginia courts have determined that personal service contracts are not assignable. "Under Virginia law, contracts for personal services are not assignable, unless both parties agree to the assignment." *McGuire v. Brown*, 114 Va. 235 (1912). "It is also an elementary principle, that an executory contract for personal service, founded on personal trust or confidence, is not assignable." *Epperson v. Epperson*, 108 Va. 471, 476 (1908).

The United States District Court for the Eastern District of Virginia decided a case similar to the one at bar in *Reynolds & Reynolds Co. v. Hardee*, 932 F. Supp. 149 (E.D. Va. 1996). In *Hardee*, the defendant entered into an employment contract, with a covenant not to compete, as a sales representative with Jordan Graphics (Jordan). Reynolds subsequently purchased a substantial portion of Jordan's assets and goodwill, including some contracts and agreements that Jordan had with third parties (including Hardee's employment agreement). Reynolds sought to enforce the covenant not to compete that Hardee entered into with Jordan. The Court in that matter reasoned as follows:

> Under Virginia law, contracts for personal services are not assignable, unless both parties agree to the assignment. *McGuire v. Brown*, 114 Va. 235 (1912); *Epperson v. Epperson*, 108 Va. 471 (1908) (stating that "an executory contract for personal service, founded on personal trust or confidence, is not assignable"). Defendant's Employment Agreement with Jordan is clearly a contract for personal services, based on trust and confidence. Defendant's position involved direct sales to clients; he acted as Jordan's agent in its dealings with customers. A person in such a position must necessarily obtain the trust and confidence of his or her employer. Defendant also placed considerable trust in Jordan by even agreeing to the non-compete clause, namely trusting that Jordan would not fire him and then invoke the covenant not to compete. Because the Employment Agreement was based on mutual trust and confidence, it is not assignable under Virginia law.

*Hardee* at 153.

In its analysis, the Court in *Hardee* considered the holdings of other jurisdictions and ultimately determined that, while some jurisdictions allow personal service contracts, or portions thereof, to be assigned, it was not consistent with Virginia's policy. "Dividing defendant's contract and allowing portions of it to be assigned, while disallowing assignment of the whole is inconsistent with this Virginia precedent." *Id.* at 155.

Therefore, in the instant case, the likelihood of success on the merits is tenuous. While Minnesota law concludes that assigning portions of personal service contracts is appropriate, Virginia law holds to the contrary. Public policy concerns would therefore become an issue.

## D. *The Public Interest*

Virginia courts discourage covenants in the restraint of trade. The Supreme Court of Virginia held in *Modern Environments, Inc. v. Stinnett,* 263 Va. 491 (2002), that:

> This Court evaluates the validity and enforceability of restrictive covenants in employment agreements using well settled principles. First, covenants in restraint of trade are not favored, will be strictly construed, and, in the event of an ambiguity, will be construed in favor of the employee. Second, the employer bears the burden to show that the restraint is no greater than necessary to protect a legitimate business interest, is not unduly harsh or oppressive in curtailing an employee's ability to earn a livelihood, and is reasonable in light of sound public policy. Finally, each case must be determined on its own facts.

*Id.* at 493 (citations omitted).

Public policy is clear that, in Virginia, enjoining the ability of one to earn a livelihood should be done only in rare circumstances.

### Conclusion

For the foregoing reasons, the Court denies the plaintiff's motion for a temporary injunction.